Bonnie **PRYOR**, Appellant

v.

**COLONY INSURANCE**, Appellee.

No. 2012–CA–000227–MR.

Court of Appeals of Kentucky.

Feb. 1, 2013.

Discretionary Review Denied by Supreme Court Dec. 11, 2013.

Donald Lee Nageleisen, Ft. Mitchell, KY, Sherrill Hondorf (argued), Batavia, OH, for appellant.

Thomas A. Sweeney, Crescent Springs, KY, William F. Stewart (argued), Blue Bell, PA, for appellee.

Before CLAYTON, COMBS, and NICKELL, Judges.

*OPINION*

CLAYTON, Judge:

Bonnie Pryor appeals the Pendleton Circuit Court's decision that granted Colony Insurance Company's motion for summary judgment. In its decision, the trial court determined that the language in the commercial general liability insurance policy excluded coverage for Glenn Pryor's death. After careful review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Greg Rucosky owns and operates an excavating, hauling, and logging business called Newcastle Hauling, LLC (hereinafter "Newcastle Hauling"). On November 4, 2009, Glen Pryor was hauling timber for Newcastle Hauling on a farm, which is owned by Melvin and Linda Seiter. He was operating a skidder, which rolled over and crushed him, tragically resulting in his death. Although Glenn Pryor's status in performing this work is disputed, it is acknowledged that he was not an employee of Newcastle Hauling.

To provide insurance coverage for Newcastle Hauling, Rucosky had purchased a commercial general liability (hereinafter "CGL") insurance policy from Colony Insurance Company (hereinafter "Colony Insurance"). The main liability coverage language in the insurance policy included an "employer's liability" exclusion, which precludes coverage for liability arising out of injuries to employees. Later, after the initial procurement of the insurance policy, Colony Insurance broadened the policy's exclusion by the addition of a "contractors coverage limitations" endorsement. This endorsement expressly barred coverage for liability arising out of injury to anyone "performing duties related to the conduct of the insured's business."

On November 4, 2010, Bonnie Pryor, the wife of Glenn Pryor, individually, and as executrix of his estate, instituted a lawsuit against Newcastle Hauling, Greg Rucosky, Melvin and Linda Seiter, and Colony Insurance. In the complaint, she alleged that Glenn Pryor was working as

an independent contractor for Newcastle Hauling to haul timber away from the Seiters' farm when he was killed in the accident. The lawsuit alleges two types of claims. First, it seeks to impose liability in tort against Rucosky, Newcastle Hauling, and the Seiters. Additionally, Pryor asks for a declaration that Colony Insurance owes coverage, not to her, but to Rucosky and Newcastle Hauling. The complaint lists eight counts, of which Counts VI–VIII are directed specifically toward Colony Insurance. Counts VI and VII are styled as requests for declaratory relief and Count VIII alleges that Colony Insurance violated the Kentucky Unfair Claims Settlement Practice Act (hereinafter "UCSPA") by refusing to provide coverage under the policy.

After the action was filed, Colony Insurance filed a motion for summary judgment asserting that Pryor's suit was an impermissible direct action, the claims were barred by a "no action" clause in the policy, and coverage was precluded by the "contractors coverage limitations" endorsement. Following the parties' briefing of the issues, the trial court heard oral arguments.

The trial court granted Colony Insurance's motion for summary judgment on Counts VI–VIII on December 28, 2011. Based on the language in the "contractors coverage limitations" endorsement, the trial court decided that, even applying a liberal construction to the pertinent language, the incident, which is the subject of this action, is not covered under the policy. Further, in making this decision, the trial court determined that the exclusionary language in the "contractors coverage limitations" endorsement was dispositive and did not address whether it was an impermissible direct action or whether the claims were barred by the policy's "no

action" clause. It is from this decision that Pryor now appeals.

## STANDARD OF REVIEW

██ In general, the proper interpretation of insurance contracts is a matter of law to be decided by a court; and, thus, an appellate court uses a *de novo*, not a deferential, standard of review. *Hugenberg v. West American Ins. Co./Ohio Cas. Group,* 249 S.W.3d 174, 185 (Ky.App.2006). Similarly, when an appellate court reviews a trial court's decision to grant summary judgment, as in this case, the appellate court must determine whether the trial court correctly found that there were no genuine issues of material fact. Kentucky Rules of Civil Procedure (CR) 56.03. And, because findings of fact are not at issue, the trial court's decision is entitled to no deference. *Schmidt v. Leppert,* 214 S.W.3d 309, 311 (Ky.2007)

## ISSUES

On appeal, Pryor maintains that the trial court erred in its decision because the "employer's liability exclusion" language is deceptive, susceptible to two interpretations, and ambiguous; and also, the trial court erred because it did not consider Glenn Pryor's status as an independent contractor in the context of the "employer's liability" exclusion, failed to note that an independent contractor cannot be an employee under Kentucky law, and hence, did not properly interpret the ramifications of the "employers' liability" exclusion as it relates to an independent contractor. In essence, she contends that an independent contractor is not analogous to a temporary worker as defined in the "employer's liability" exclusion and, since Glenn Pryor was an independent contractor, he was covered by the CGL policy.

In contrast, Colony Insurance argues that the trial court correctly granted the

summary judgment motion because Pryor's claim of coverage falls squarely within the scope of the "contractors coverage limitations" exclusion and, further, constitutes an impermissible direct action against the insurance company.

## ANALYSIS

1. Exclusionary language in the policy and the endorsement

■ As noted above, Colony Insurance issued to Rucosky and Newcastle Hauling a CGL policy that had a standard "employer's liability" exclusion that precluded coverage for liability arising out of injuries to employees. In addition, according to Colony Insurance, the "employer's liability" exclusion was broadened by a "contractors coverage limitations" endorsement, which was later added to the policy.

Before addressing Pryor's arguments in opposition to the trial court's grant of summary judgment to Colony Insurance, it is important to examine the relevant language of the insurance policy discussing the "employer's liability" exclusion. In the original policy, the language states:

"Bodily injury" to:

(1) An "employee" of the insured arising out and in the course of:

    (a) Employment by the insured; or

    (b) Performing duties related to the conduct of the insured's business;

And the language concerning the exclusion for "bodily injury" in the "contractors coverage limitations" endorsement is similar:

"Bodily injury" to:

(1) An "employee" or "temporary worker" of **any** insured arising out of and in the course of:

    (a) Employment by **any** insured; or

    (b) Performing duties related to the conduct of **any** insured's business;

[Emphasis added to highlight the differences in the provisions.] Primarily, the difference in the language of the documents is the definition of "temporary worker." In the original policy, "temporary worker" is defined as "a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions." Not only are "temporary employees" added to the "employer's liability" exclusion in the endorsement but also the definition of "temporary worker" is revised as follows:

"Temporary worker" means any person who is:

(a) furnished to you to substitute for a permanent "employee";

(b) a short-term worker; or

(c) not an "employee" or "volunteer worker."

Further, the endorsement provides that "[t]his endorsement modifies insurance provided under the following: . . . ." Thus, the plain meaning of the language in the endorsement provides that it prevails over the language in the original policy.

Still, the primary question remains unanswered. Does the language in the endorsement broadening the "employer's liability" exclusion and its definition of "temporary worker" exclude coverage for Glenn Pryor based on his status and the services rendered by him? Significantly, in answering that question, we observe that the language of the endorsement expressly barred coverage for liability arising out of injury to anyone "performing duties related to the conduct of the insured's business" and that the definition of "temporary worker" is modified by a new clause "not an 'employee' or 'volunteer worker.'"

Now, returning to our evaluation of the various positions, we first consider Pryor's argument that the terms of the "employ-

er's liability" exclusion are ambiguous, deceptive, and contain two distinct definitions of "temporary worker." Even though she is correct in highlighting that the definition of temporary worker is not the same in the policy as in the endorsement, the language of the endorsement clearly notes that it prevails over the policy. Thus, the definition of "temporary worker" in the endorsement is the applicable and only relevant definition.

Next, Pryor contends that the exclusions in the CGL policy in essence exclude every eventuality for every business owner. Relying on *Brown v. Indiana Insurance Company*, 184 S.W.3d 528 (Ky.2005), but without specifically highlighting where *Brown* states the following proposition, she proffers that the primary purpose of the exclusion of employees in a CGL policy is to differentiate between employees and the public. She then asserts that Glenn Pryor, as an independent contractor, was a member of the public and, therefore, according to her logic, he is covered under the policy.

*Brown*, however, resolved the following question:

> [W]hether a commercial automobile liability insurance policy affords coverage for damages sought in a tort action brought against the insured employer for the wrongful death of its employee, where the action would have been barred by the exclusive remedy provision of the Kentucky Workers' Compensation Act but for the fact that the employer failed to procure a policy of workers' compensation insurance.

*Id.* at 531. Hence, the ultimate issue in the *Brown* case concerns whether the exclusive remedy provision of the workers' compensation act excludes damages for liability when the employer failed to purchase workers' compensation insurance.

Therefore, both the facts and the issues are distinguishable from the instant case.

The question in this case involves whether the language of the CGL policy's "employer's liability" exclusion as broadened by the endorsement excludes coverage for Glenn Pryor. No issues of workers' compensation coverage are relevant to the resolution of this matter.

Moreover, it is a stretch to suggest that an "independent contractor" is a member of the public at large. While it is true that an independent contractor under Kentucky workers' compensation jurisprudence is not an employee, but he is also not relegated to the status of a member of the public. In addition, in the case at bar, the plain meaning of the language in the "contractors coverage limitations" endorsement provides that coverage is not available for one "performing duties related to the conduct of any insured's business."

■ This language is not ambiguous or deceptive nor does it render the CGL policy meaningless. As observed in the trial court's opinion:

> [T]hey [plaintiffs] allege that if Colony's interpretation of the policy is acceptable, the policy would in effect provide no coverage at all. Colony points out that the policy provides coverage for those people who are not performing duties related to the conduct of the insured's business, and it appears to the Court that the policy would in fact cover this group of people. The plaintiff's statement that the policy provides no coverage at all is overbroad and inaccurate.

We agree. Generally, a CGL policy protects the insured from tort liability for physical injury to the person or property of others. That is the purpose of Colony Insurance's CGL policy, and Pryor's assertion that no one is covered by Colony Insurance's policy is unsound.

■ Another argument by Pryor is that because, under her reasoning, the terms of the contract are ambiguous, the reasonable expectations doctrine applies. This doctrine pertains when there are ambiguities within a policy. The rationale was explained in *True v. Raines*, 99 S.W.3d 439, 443 (Ky.2003):

> [T]he reasonable expectation doctrine ... resolves an insurance-policy ambiguity in favor of the insured's reasonable expectation[.] ... The reasonable expectation doctrine "is based on the premise that policy language will be construed as laymen would understand it" and applies only to policies with ambiguous terms—e.g., when a policy is susceptible to two (2) or more reasonable interpretations. Under the reasonable expectations doctrine, when such an ambiguity exists, the ambiguous terms should be interpreted "in favor of the insured's reasonable expectations." ... Only actual ambiguities, not fanciful ones, will trigger application of the doctrine.

(Citations and footnotes omitted.)

■ Yet, in the aforementioned *Brown* case, the Kentucky Supreme Court explained that the point of the reasonable expectations doctrine is that insured parties are entitled to all the coverage that they may reasonably expect under the policy, and a clear manifestation of the insurance company's intent to exclude coverage will defeat that expectation. *Brown*, 184 S.W.3d at 540. Additionally, in the absence of ambiguities or of a statute to the contrary, the terms of an insurance policy will be enforced as drawn. *Osborne v. Unigard Indemnity Co.*, 719 S.W.2d 737, 740 (Ky.App.1986). And, as noted by the trial court in citing *Woodson v. Manhattan Life Ins. Co. of New York*, 743 S.W.2d 835 (Ky.1987), most insurance policies are contracts of adhesion, which allows the courts

to provide the doctrine of ambiguity. But even though restrictive interpretation of a standardized "adhesion" contract is not favored, neither is it the function of the courts to make a new contract for the parties to an insurance contract. *Moore v. Commonwealth Life Ins. Co.*, 759 S.W.2d 598, 599 (Ky.App.1988).

■ To ascertain the construction of an insurance contract, one begins with the text of the policy itself. So that, "the words employed in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning." *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky.1999). And, if no ambiguity exists, a reasonable interpretation of an insurance contract is to be consistent with the plain meaning of the language in the contract. *Brown*, 184 S.W.3d at 540.

■ Furthermore, although a rule of strict construction has been used in many cases involving insurance companies, it does not mean that every doubt must be resolved against an insurance company nor does it change the mandate that the policy must receive a reasonable interpretation consistent with the parties' expression in the language of the contract. *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.*, 870 S.W.2d 223, 226–27 (Ky.1994).

■ Here, our evaluation of the language is that no ambiguity exists. The language and its meaning are clear in the endorsement. Pryor is a temporary worker; that is, he was not an "employee" or "volunteer worker," and he was "performing duties related to the conduct of any insured's business." And, thus, a nonexistent ambiguity should not be used to resolve a policy against a company nor should courts rewrite an insurance con-

tract to enlarge the risk to the insurer. *Id.*

Lastly, we consider, in particular, Pryor's assertion that a rational reading of the policy shows that an independent contractor was not intended to be excluded from coverage under the policy. She contends that an independent contractor is a member of the general public. Therefore, since her husband was acting as an independent contractor, he was a member of the general public and covered under the policy. Interestingly, by so reasoning, Pryor concedes that the CGL insurance does cover the general public rather than her earlier opinion that the CGL policy covered no one.

In response, Colony Insurance maintains that the "employer's liability" exclusion was substantially broadened by the "contractors coverage limitations" endorsement. This extension to the "employer's liability" exclusion obviously excludes coverage for Glenn Pryor's activities on the day in question. Furthermore, concerning Pryor's assertion that it conceded Glenn Pryor's status as an independent contractor, it firmly states that it has never conceded that fact.

But, it purports that even if he acted as an independent contractor, it is not relevant to the analysis of whether he was covered under this CGL policy. According to Colony Insurance's analysis, Glenn Pryor was performing services for Newcastle Hauling and, hence, coverage for him was excluded since his activities fall under the definition of "temporary worker," (not an employee or volunteer), who was "performing duties related to the conduct of any insured's business." Hence, they posit that individuals acting in the capacity of Glenn Pryor are specifically excluded from coverage under Colony Insurance's "contractors coverage limitations" endorsement.

Returning to Pryor's view that, because her husband was not an employee but an independent contractor, we observe that because Kentucky law distinguishes between employees and independent contractors in the workers' compensation statutes, it does not refer to independent contractors as members of the general public. Rather, it merely exempts them from coverage under these statutes. In addition, Pryor provides no caselaw or statute supporting this position.

█ Furthermore, there are several problems including flaws in logic to Pryor's assertion that her husband was not an employee or a temporary worker but an independent contractor and, hence, a member of the public. First, Pryor provides no legal authority for the notion that the differential between employee and independent contractor found in the workers' compensation statutes applies to the interpretation of the language in a CGL insurance policy. Second, Pryor provides no reasoning or authority for the proposition that an independent contractor is not or could not be a temporary worker. Third, she does not establish that an independent contractor is automatically part of the general public. To us it seems rather narrow sighted to suggest that the only groups to which Glenn Pryor could have belonged were employees or the general public. Undoubtedly, another group includes temporary workers (under which Glenn Pryor arguably is subsumed). Finally, other than an assertion that Glenn Pryor acted as an independent contractor, Pryor, while noting the legal differences between an employee and an independent contractor found in the workers' compensation statutes, does not provide any proof that her husband was an independent contractor. It is axiomatic that a mere assertion of a fact does not make it a genuine issue of material fact that defeats a sum-

mary judgment motion. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky.1991).

The following statement found in *Brown*, explains the rationale behind the purchase of commercial general liability insurance:

> The intent of commercial general liability policies is to protect against the unpredictable and potentially unlimited liability that can result from accidents causing injury to other persons or their property. A commercial general liability policy does not cover the insured's obligations under a workers' compensation policy or bodily injury to the insured's employees arising out of the employment. The primary purpose of an employee exclusion clause is to draw a sharp line between employees and members of the general public.

*Brown*, 184 S.W.3d at 540 (citing *Am. Family Mut. Ins. Co. v. Tickle*, 99 S.W.3d 25, 29 (Mo.Ct.App.2003) (internal citations and quotations omitted)). Thus, given that the primary purpose of an employee exclusion clause is to draw a distinction between an employee and members of the general public, Glenn Pryor had to show that he was a member of the general public. The contention that an independent contractor is a member of the general public is disingenuous. Even the workers' compensation statutes do not make such a conclusion. We concur with the trial court that the language of the insurance policy is dispositive and that Glenn Pryor was not covered under it.

### 2. Permissibility of direct action

The trial court ascertained that because the language of the insurance contract excluded coverage for Glenn Pryor, it did not need to address the two remaining issues. Nonetheless, since our review is *de novo* and because Colony Insurance has raised the argument, it is necessary to address whether Kentucky jurisprudence allows direct action by an injured third party against an alleged tortfeasor's insurance company.

In the complaint, Pryor presented two causes of action. In Count I through Count V, she asserted that all the defendants, except Colony Insurance, were liable in tort for the death of Glenn Pryor. But in Counts VI and VII, Pryor sought a declaratory judgment against Colony Insurance. She wanted the trial court to declare that Colony Insurance's CGL coverage of Rucosky and Newcastle Hauling covered her husband's death and that she was entitled to full coverage for the death of her husband. Lastly, in Count VIII, she made a claim that Colony Insurance had violated Kentucky's UCSPA Act and asked for the concomitant remedies following from such a violation.

■ In response to the claims against it, Colony Insurance argues that Pryor's claims are barred because Kentucky jurisprudence precludes "direct actions" by claimants against third-party liability insurers. In *N.Y. Indem. Co. v. Ewen*, 221 Ky. 114, 298 S.W. 182, 185 (1927), the highest Court in Kentucky recognized "that the injured person must first establish his claim against the wrongdoer in his action for negligence and thereafter be assured of the fruits of his victory by being permitted to collect from the indemnity company." Hence, the general rule declared in this seminal case is that a complainant must first establish liability before seeking indemnity from an insurer in an action based on the insured's negligence. *Id.* The prohibition of direct actions against insurers until liability has been established has remained the law in Kentucky. *See State Auto. Mut. Ins. Co. v. Empire Fire & Marine Ins. Co.*, 808 S.W.2d 805, 808 (Ky.1991); *Cuppy v. General Accident Fire and Life Assur. Co.,*

378 S.W.2d 629, 632 (Ky.1964); *Chambers v. Ideal Pure Milk Co.*, 245 S.W.2d 589, 591 (Ky.1952); and *Ford v. Ratliff*, 183 S.W.3d 199, 203 (Ky.App.2006).

In the case at hand, however, Pryor framed the issues in her complaint as a request for a declaratory judgment and recompense for an alleged violation of UCSPA. These factors make the issue more complex. With respect to the counts requesting a declaratory judgment, in essence, the determination that Colony Insurance does not cover Glenn Pryor's action under its CGL policy with Newcastle Hauling is, basically, a denial of the request for a declaratory judgment.

▉ Next, we address whether Pryor was authorized to sue as a third-party claimant under UCSPA. In fact, an insurance company's violation of the UCSPA creates a private cause of action both for the named insured and for those who have claims against the named insured, and the same standards govern both types of cases. *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky.1997). But a third-party claimant may only sue the insurance company under USCPA when coverage is not contested or already established. *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 516 (Ky.2006). And, as stated by Chief Justice Robert Stephens in his concurring opinion in *Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176, 178 (Ky.1989):

> An insured does not avail himself of this cause of action by merely alleging bad faith due to an insurance company's disputing or delaying payment on a claim. An insured must prove that the insurer is obligated to pay under the policy, that the insurer lacks a reasonable basis for denying the claim, and that the insurer either knew there was no reasonable basis to deny the claim or acted with reckless disregard for whether such a basis existed. An insurer's refusal to pay on a claim, alone, should not be sufficient to trigger the firing of this new tort.

Therefore, a third party cannot make a claim under UCSPA for the purpose of establishing coverage. Therefore, Pryor cannot avail herself of a bad faith action in order to establish that insurance coverage was available.

### CONCLUSION

Thus, the Pendleton Circuit Court's Order dismissing Counts VI–VIII of Pryor's complaint and denying the motion for Declaratory Judgment is affirmed.

ALL CONCUR.