NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0345n.06

**No. 11-5503**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

BRANCH BANKING & TRUST COMPANY, as )
Trustee of the Charles A. Brown and Elise A. Brown )
Irrevocable Life Insurance Trust, )
  )
            Plaintiff-Appellee, )
  )
        v. )
  )
PACIFIC LIFE INSURANCE COMPANY, )
  )
            Defendant-Appellant. )

**FILED
*Apr 08, 2013*
DEBORAH S. HUNT, Clerk**

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

_____

BEFORE:  BATCHELDER, Chief Judge; GRIFFIN, Circuit Judge; and COHN, Senior District Judge.[*]

COHN, Senior District Judge.

This is a dispute over a life insurance policy governed by Kentucky law.

Defendant/Appellant Pacific Life Insurance Company ("Pacific Life") appeals the district court's

entry of summary judgment in favor of Plaintiff/Appellee Branch Banking & Trust Company

("BB&T") as trustee of the Charles A.  Brown & Elise A. Brown irrevocable life insurance trust.

BB&T owned a variable life insurance policy issued by Pacific Life.  BB&T attempted to exchange

the Pacific Life policy ("PL Policy") for a policy issued by John Hancock Life Insurance Company

("John Hancock") using a transaction known as a "1035 Exchange."  As will be explained, there was

_____

[*]The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of
Michigan, sitting by designation.

a delay between BB&T's request to surrender the policy and Pacific Life's effectuating the surrender. During the period of delay, the value of the policy decreased by $259,926.33 due to a precipitous decline in the stock market. BB&T sought to recover that amount from Pacific Life, contending that the PL Policy was properly surrendered on the day Pacific Life received the request from BB&T. The district court agreed with BB&T and granted its motion for summary judgment based on a breach of contract claim.[1] The district court later awarded BB&T damages of $259,926.33, plus pre- and post-judgment interest. Pacific Life appeals the district court's decision in favor of BB&T.

For the reasons that follow, we find that there are genuine issues of material fact as to when the PL Policy was properly surrendered. We therefore reverse and remand for further proceedings consistent with this opinion.

## I. Background

In 2001, Charles and Elise Brown established an irrevocable life insurance trust for the benefit of their children (the "Trust"). The Trust purchased a variable life insurance policy from Pacific Life. The PL Policy provided a $12.8 million death benefit. A variable universal life insurance policy allows policy owners to invest the cash value in a wide variety of variable accounts (or investment options), which are similar to mutual funds. The "variable" component refers to the owner's ability to invest in options whose values vary, because the investments are in stock and/or

---

[1]BB&T also brought claims for promissory estoppel, detrimental reliance, and misrepresentation, but stipulated to dismiss these claims. The district court denied summary judgment on BB&T's other state law claims for breach of fiduciary duty, breach of duty of best execution, and breach of duty of good faith and fair dealing, finding no "reasonable inference that Pacific Life breached any fiduciary duty or good faith responsibility in its dealings with either BB&T or John Hancock." BB&T does not challenge the district court's dismissal of these claims.

bond markets. The choice of which variable accounts to use is entirely at the owner's discretion, as the policy owner assumes the risks of investment performance in these accounts.

In February 2003, BB&T replaced Bank One as owner of the PL Policy. To make this change, the Browns submitted a Pacific Life form entitled Ownership, Name or Beneficiary Change Request documenting that BB&T, in its capacity as trustee of the Trust, was the PL Policy's new owner and beneficiary. This form amended and became part of the PL Policy, thus requiring Pacific Life to send all "future premium and other notices to" BB&T, attention Sheryl L. Keen.

In early 2008, BB&T notified Pacific Life that Walter Koczot had replaced Sheryl Keen as BB&T's authorized agent and that notices should be sent to the attention of Mr. Koczot rather than Ms. Keen.

In August of 2008, BB&T decided to substitute for the PL Policy a John Hancock policy with more beneficial terms. In order to accomplish this without negative tax consequences, BB&T undertook a tax free exchange of the policies under Section 1035 of the Internal Revenue Code, known in the industry as a "1035 Exchange." A 1035 Exchange involves three steps: First, BB&T transfers ownership of the PL Policy to John Hancock. Second, after the ownership change is effective, John Hancock surrenders the PL Policy and uses the proceeds to purchase a John Hancock policy. Finally, John Hancock assigns the new policy to BB&T.

BB&T began the 1035 Exchange process on August 18, 2008, when it executed an assignment of the PL Policy to John Hancock. In early September, John Hancock submitted a document to Pacific Life entitled "EXTERNAL 1035 (Non-Qualified Absolute Assignment/Beneficiary Change" (the "1035 Exchange Document"). The 1035 Exchange Document

purported to accomplish all the necessary steps of a 1035 Exchange, by (1) naming John Hancock the new beneficiary of the PL Policy, (2) assigning the PL Policy from BB&T to John Hancock and (3) authorizing the surrender of the net cash surrender value to John Hancock.

On September 9, 2008, Pacific Life received the 1035 Exchange Document. On that day, the PL Policy had a net cash surrender value of $779,818.19.

The next day, Pacific Life sent a letter to BB&T, to Koczot's attention, stating that it had "been advised by John Hancock Life Insurance Company (U.S.A.) that your Pacific Life Policy may be replaced," and provided contact information should BB&T "decide to keep your existing policy and cancel your surrender request."

Pacific Life also sent a letter to John Hancock, acknowledging receipt of the 1035 request. However, Pacific Life stated that the request was incomplete because Pacific Life "require[d] the signature of a corporate officer for Branch Banking & Trust Company, as trustee to include title and corporate seal or notary." This letter also stated that Pacific Life "will process the exchange effective the date the final requirement is received." This requirement of a "title and corporate seal or notary" derives from the PL Policy's requirement that a surrender request be a "written request" which is defined as "request in writing signed by you that is satisfactory to [Pacific Life] and filed at its Home Office." It is Pacific Life's position that because it did not have records containing Koczot's signature, it needed the "title and corporate seal or notary" requirement in order to effectuate the 1035 Exchange, i.e. in order for the documents to be "satisfactory" to Pacific Life.

On September 16, 2008, John Hancock sent an email to a BB&T employee, who was not involved in the 1035 Exchange, informing them of the additional requirement. The correspondence,

which the district court correctly described as "cryptic," stated that there are "Requirements Needed for Policy Issue" and stated: "A letter was sent to JH & rec'd on 9/16 requesting the officer's signature either be notarized on the 1035 form or a Corporate Seal w/ the Officer's signature & title." The email also stated that these requirements would be needed to obtain the "1035 Funds." Unfortunately, Arthur Swain Beard, who was responsible for the 1035 Exchange internally at BB&T, should have received the notification from John Hancock. He did not.

On October 1, 2008, BB&T personnel, including Koczot, contacted Pacific Life via telephone to inquire as to the status of the 1035 Exchange. During that phone call, Pacific Life informed Koczot of the signature/seal requirement. After the phone call, BB&T added a notary block and a corporate seal to Koczot's signature in the 1035 Exchange Document.

BB&T did not immediately submit the 1035 Exchange Document containing the notarized signature of Koczot to Pacific Life. In the interim, BB&T also requested that Pacific Life process the surrender request as of the September 9, 2008 receipt date. Pacific Life refused.

Finally, on December 11, 2008, Pacific Life received the notarized signature of Koczot. Pacific Life processed the surrender request as of December 11, 2008. On that date, the PL Policy's net cash surrender value had dropped by $259.926.33.

BB&T sued Pacific Life to recover for the loss in value. The parties filed cross motions for summary judgment. The district court granted BB&T's motion on its breach of contract claim, finding that the effective surrender date of the PL Policy was September 9, 2008, the date Pacific Life first received the 1035 Exchange documents. The district court granted Pacific Life's motion as to BB&T's other claims. Pacific Life appeals the judgment in favor of BB&T.

## II.  Standard of Review

We review de novo a district court's decision to grant summary judgment. *Huckaby v. Priest,* 636 F.3d 211, 216 (6th Cir. 2011). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A motion for summary judgment should not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## III.  Discussion

### A.

The parties agree that BB&T validly assigned the PL Policy to John Hancock. However, the parties disagree as to the effectiveness of the surrender. BB&T says that the surrender provision in the PL Policy was an unconditional offer that John Hancock accepted when Pacific Life received the 1035 Exchange Document on September 9, 2008. The district court agreed, finding that although Pacific Life had the right to assure that the surrender request be "satisfactory" to it by requiring a notarized signature, that did not affect Pacific Life's obligation to accept John Hancock's surrender request on the date it first received the 1035 Exchange Document. Pacific Life and others,[1] however, contend that an insurer has a right to impose requirements, such as a notarized signature or corporate

---

[1]An amicus brief was filed by the American Council of Life Insurers, supporting Pacific Life.

seal, to complete a surrender in a 1035 Exchange. When and only when it receives the necessary documents in the required form is Pacific Life obligated to process the surrender request and effectuate the 1035 Exchange.

B.

The district court relied on *Farmers Bank & Capital Trust Co. of Frankfort Ky. v. N.W. Mut. Life Ins. Co.,* 891 S.W.2d 413 (Ky. Ct. App. 1995). In *Farmers Bank*, the Kentucky Court of Appeals addressed a life insurance policy that included an unconditional right of surrender. The Kentucky Court of Appeals stated that a surrender "provision is a continuous, irrevocable offer which becomes a binding contract when accepted by the owner of the policy." *Id.* at 416 (internal quotation marks omitted). "[W]hen the owner of a policy accepts the outstanding offer, the insurer then has 'no right, option or privilege to reject the unconditional notification of the exercise'" of surrender. *Id.* (citation omitted). "[W]hen so notified in *unqualified* terms, the obligation of the company to pay the cash surrender value became then and there a fixed and perfected obligation." *Id.* (emphasis added and internal quotation marks omitted). While the court in *Farmers Bank* treated the surrender clause as unconditional offers, the problem here is that Pacific Life's surrender provision says more than did the surrender language at issue in *Farmers Bank*. The PL Policy states that "upon written request while either insured is living you may surrender this policy for its Net Cash Surrender Value. The policy will terminate on the date the request is received at the Home Office." A "written request" is defined as "a request in writing signed by you that is satisfactory to [Pacific Life] and filed at its Home Office." The inclusion of the language "satisfactory to PL" alters the legal landscape and distinguishes this case from *Farmers Bank*. While the court in *Farmers*

*Bank* found an unconditional offer and an unqualified acceptance, the PL Policy here is not the same. The PL Policy provides that it may be surrendered when it receives a "satisfactory" written request. Contrary to the district court, we believe that the "satisfactory to [Pacific Life]" language is legally significant. To conclude otherwise would be to effectively ignore the language in the PL Policy. This is improper. The real question is what "satisfactory to [Pacific Life]" means under the circumstances.

To construe an insurance contract, one begins with the text of the policy itself. "The words employed in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning." *See Nationwide Mut. Ins. Co. v. Nolan,* 10 S.W.3d 129, 131 (Ky. 1999). And, if no ambiguity exists, a reasonable interpretation of an insurance contract is to be consistent with the plain meaning of the language in the contract. *Brown v. Ind. Ins. Co.,* 184 S.W.3d 528, 540 (Ky. 2005). Furthermore, "although a rule of strict construction has been used in many cases involving insurance companies, it does not mean that every doubt must be resolved against an insurance company nor does it change the mandate that the policy must receive a reasonable interpretation consistent with the parties' expression in the language of the contract." *Pryor v. Colony Ins.,* No. 2012–CA–000227–MR, __ S.W.3d ___, 2013 WL 386880 at *5 (Ky. Ct. App. Feb. 1, 2013) (citing *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.,* 870 S.W.2d 223, 226–27 (Ky. 1994)).

Here, Pacific Life argues that it was reasonable for it to ask for a notarized signature of Koczot because it had no record of his signature. In other words, "satisfactory to [Pacific] Life]" under the circumstances meant obtaining a notarized signature. We find that there is a genuine issue

8

of material fact displayed in the record as to whether Pacific Life's decision was reasonable, that is, whether Pacific Life did, in fact, receive a "satisfactory" surrender request on September 9, 2008. In reaching this conclusion, we note that Pacific Life twice sent BB&T confirmations that its "records have been updated to reflect" that Koczot had replaced Keen, and thereafter Pacific Life's addressed all account statements, correspondence and other notices that it sent to BB&T to Koczot's attention. The express terms of the PL Policy require that all notices concerning the PL Policy and all reports concerning its accumulated or surrender value and any policy illustrations be sent to the owner of the PL Policy. These statements and communications that Pacific Life sent to Koczot between February and August 2008 included quarterly statements of account value and a policy illustration, and Pacific Life's addressing correspondence to Koczot as "Dear Trustee" may justifiably lead to the conclusion that Pacific Life had recognized Koczot as BB&T's authorized agent prior to August 2008. Thus, when Pacific Life received the 1035 Exchange Document on September 9, 2008 which contained Koczot's name, but not a notarized signature, a reasonable mind could conclude that the 1035 Exchange Document was, in fact, "satisfactory to [Pacific Life]." However, a reasonable mind could also conclude that under the complex circumstances of a 1035 Exchange, Pacific Life's request for a notarized signature of Koczot before surrendering a policy to a third party was proper. That is to say that Pacific Life did not receive a surrender request that was "satisfactory" until December 11, 2008.

Because we conclude that BB&T is not entitled to summary judgment on its breach of contract claim, we decline to address the issue of whether the district court correctly determined damages as a result of the alleged breach.

IV.  Conclusion

For the reasons stated above, the district court's judgment is REVERSED and this matter is

REMANDED for further proceedings consistent with this opinion.