**BRANCH BANKING & TRUST COMPANY, Plaintiff–Appellee,**

v.

**PACIFIC LIFE INSURANCE COMPANY, Defendant–Appellant.**

No. 14–5871.

United States Court of Appeals, Sixth Circuit.

April 12, 2016.

Before: BATCHELDER and STRANCH, Circuit Judges; and HOOD, District Judge.*

ALICE M. BATCHELDER, Circuit Judge.

Following a remand, this case was tried to a jury, which found for Branch Banking & Trust, and the district court entered judgment. Pacific Life Insurance now appeals certain of the district court's rulings. We AFFIRM.

## I.

Branch Banking & Trust (BB & T) is the trustee of the Charles and Elise Brown Irrevocable Life Insurance Trust, originally funded with a Pacific Life "variable life insurance policy" at a death benefit of $12.83 million. In 2008, Walter Koczot, the BB & T trust officer for this Trust, decided to replace the Pacific Life policy with a similar policy from the John Hancock Company. Section 1035 of the IRS Code prescribes three steps for this replacement: (1) BB & T assigns ownership of the Pacific Life policy to John Hancock, (2) John Hancock instructs Pacific life to "surrender" its policy, ending the coverage and redeeming the cash value to John Hancock; and (3) John Hancock issues the new policy to the Trust care of BB & T.

On August 18, 2008, Koczot assigned the Pacific Life policy to John Hancock. On September 8, 2008, Jonathan Squire of John Hancock sent a properly authenticated "surrender request" letter to Pacific Life and appended a copy of the assignment form as proof of John Hancock's

ownership and Squire's authority to request surrender and receive the proceeds. Pacific Life accepted Squire's signature and authority immediately. That was never in dispute.

Under the Pacific Life policy for "surrender," "[u]pon *written request* . . . the policy will terminate on the date the request is received at the Home Office" (emphasis added). A "written request" "is a request in writing signed by [the policy owner] that is satisfactory to [Pacific Life] and filed at its Home Office." Pacific Life received Squire's surrender request letter at its Home Office on September 9, 2008. On that day, the policy's cash value was $779,818.19.

Specifically, Vera Hernandez, a Pacific Life InForce Accounting Specialist, received the letter and recognized it as a typical 1035 Exchange letter. She recognized Squire's signature, that he was an authorized officer of John Hancock, and that this was a legitimate request. She did not suspect any type of fraud. But because she did not have Koczot's signature on file and because Koczot's signature on the assignment form had neither a notarization nor a corporate seal, she decided that Squire's request was not satisfactory (i.e., not "satisfactory to Pacific Life," ergo not a "written request" necessitating a surrender under the policy provision).

Hernandez sent two form letters by regular mail. She sent one to Koczot, as the trustee at BB & T, stating that she had received the surrender request but omitting any mention of further requirements or her refusal to surrender the policy. She sent the other letter to John Hancock's "New Business Service Cen-

* The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

ter," advising that she would not process the surrender request until she received "the signature of a corporate officer for Branch Banking & Trust Company, as trustee to include title and corporate seal or notary." Because she did not copy Squire, Koczot, or anyone at BB & T, they remained unaware of this demand for additional authentication.

Meanwhile, during September 2008, the stock market was crashing and the policy's investment-based cash value was declining. On October 1, 2008, Koczot and Squire discovered that Hernandez had refused the surrender as an unsatisfactory request. On that day, the policy's cash value was $723,655.55, representing a potential but unrealized loss of $56,162.64.

BB & T asked Pacific Life to process the 1035 Exchange using the September 9 cash value (i.e., no loss), but Pacific Life refused. BB & T feared that if it actualized the potential loss by submitting the notarization and corporate seal on October 1, completing the exchange at the lower value, it would be responsible for the loss. Eventually, on December 11, 2008, BB & T relented and sent the renewed surrender request, with the notarization and corporate seal, while also reserving its right to sue for the difference. Pacific Life executed the Exchange the next day. The policy's cash value on that day was $519,891.86; an actualized loss of $259,926.33.

BB & T sued for breach of contract on its theory that the policy required Pacific Life to send notice to the policy owner, that BB & T was the policy owner, and that Pacific Life failed to send the September 9 notice of additional requirement to BB & T. Pacific Life replied that BB & T was mistaken because BB & T had assigned the policy to John Hancock, so John Hancock was the owner on September 9 and Pacific Life had properly notified the "owner," namely, John Hancock. Pacific Life was very clear about this in its motion for summary judgment:

> BB & T is correct that the [Pacific Life] Policy requires Pacific Life to send any premium or 'other notice' regarding the Policy to the policy owner. However, BB & T incorrectly alleges that BB & T, as trustee of the Trust, was the PL Policy owner. BB & T had previously assigned 'absolutely all right, title, and interest in the [Policy]' to John Hancock. Accordingly, BB & T was no longer the PL Policy owner. Pacific Life complied with the terms of the PL Policy and directed the correspondence to John Hancock, the PL Policy owner as a result of BB & T's execution of the Absolute Assignment.

R. 22–2 at p. 15 (citations omitted). This same premise supported Pacific Life's claim that BB & T was not the real party in interest, which led BB & T to amend its complaint, agree that John Hancock was the owner, and reassert its rights as an intended third-party beneficiary.

Under its new breach-of-contract theory, BB & T moved for summary judgment based on Pacific Life's refusal of the valid surrender request from the owner (John Hancock) and unauthorized demand for "a signature of person [i.e., Koczot of BB & T] who was not affiliated with the policy owner, and whose signature, authentic or not, was not required under the terms of the PL Policy." BB & T pointed out that the policy provision governing assignment does not contain the phrase "written request" that is in the surrender provision and, even if it did, a "written request" specifically requires only the *owner's* signature. Thus, Pacific Life had no authority to demand notarization or corporate seal on Koczot's assignment to John Hancock.

The district court granted BB & T's motion for summary judgment, holding that Pacific Life had breached the policy by refusing the policy owner's satisfactory surrender request. *Branch Banking & Trust Co. v. Pacific Life Ins. Co.*, No. 3:09–cv–284, 2010 WL 4884689, *4 (W.D.Ky. Nov. 24, 2010) (relying on *Farmers Bank & Capital Trust Co. v. Nw. Mut. Life Ins. Co.*, 891 S.W.2d 413 (Ky.App. 1995)). The court decided the damages in a subsequent opinion and held that mitigation of damages was impractical, unavailable, or unnecessary. *Branch Banking & Trust Co. v. Pacific Life Ins. Co.*, No. 3:09–cv–284, 2011 WL 1157703, *3 (W.D.Ky. Mar. 29, 2011). The court also awarded pre- and post-judgment interest under Kentucky law.

On appeal, we reversed the grant of summary judgment and remanded. *See Branch Banking & Trust Co. v. Pacific Life Ins. Co.*, 520 Fed.Appx. 403 (6th Cir. 2013). We held that "there is a genuine issue of material fact displayed in the record as to whether Pacific Life's decision [to demand notarization and corporate seal on the assignment to John Hancock] was reasonable," under the written terms of the policy, specifically the provision requiring that the surrender request be "satisfactory to Pacific Life." We concluded the opinion with this dicta:

> [A] reasonable mind could ... conclude that under the complex circumstances of a 1035 Exchange, Pacific Life's request for a notarized signature of Koczot before surrendering a policy to a third party [i.e., John Hancock] was proper.

*Id.* at 408. Note that the opinion had expressly accepted the parties' premise and acknowledged that John Hancock was the policy owner. So, when referring to John Hancock as a "third party" in this dicta, we were referring to the longstanding relationship between trustee BB & T (Koczot) and insurer Pacific Life; we were not referring to John Hancock as a "third party to the contract." Given our reversal of the summary judgment and the decision to remand, we declined to rule on the mitigation question. *Id.* And because Pacific Life had not appealed the district court's application of pre- and post-judgment interest, we did not consider or mention it.

On remand, the district court stated the sole determinative issue as "whether Pacific Life was reasonable in requiring title and corporate seal or notary with Walter Koczot's signature to complete the surrender request." *Branch Banking & Trust Co. v. Pacific Life Ins. Co.*, 985 F.Supp.2d 844, 846 (W.D.Ky.2013). Regarding damages, the court said: if "Pacific Life acted reasonably, BB & T will not be entitled to any damages." *Id.* at 848. BB & T had argued for damages even if Pacific Life acted reasonably, on the theory that Pacific Life's failure to notify BB & T of the missing requirements caused the delay. The court disagreed, explaining that, because "John Hancock was the undisputed owner of the Pacific Life Policy[,] ... Pacific Life complied with its contractual notice obligations." *Id.* at 847. On the other hand, said the court, if Pacific Life's requirements were unreasonable, BB & T was entitled to the full loss of $259,926.33. The court again refused to require mitigation of damages, explaining that "how to mitigate would have been a matter of pure speculation." *Id.* at 849. Finally, the court repeated its prior ruling that pre- and post-judgment interest would apply, at Kentucky rates.

Trial lasted three days. The jury deliberated for an hour and ruled for BB & T. The court entered judgment for BB & T, awarding $259,926.33 in damages, plus pre- and post-judgment interest at the

Kentucky statutory rates of 8% and 12%, respectively. Pacific Life appeals.

## II.

### A.

■ Pacific Life cites the dicta from our prior opinion to argue that BB & T was the policy owner, and that the district court erred by dictating to the jury that John Hancock was the policy owner. BB & T replies that Pacific Life has stated from the beginning that John Hancock was the owner, that we, like the district court, accepted that premise, and that judicial estoppel prevents Pacific Life from changing its position now to "manufacture a trial error."

Judicial estoppel "prevent[s] a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." *Reynolds v. C.I.R.*, 861 F.2d 469, 472 (6th Cir.1988). Judicial estoppel is not limited to situations in which the party has prevailed on the merits by pressing the prior position; rather, it requires only "judicial acceptance" of the prior position, meaning that the court "adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Id.* at 473.

Here, Pacific Life responded to BB & T's initial complaint by insisting that John Hancock was the policy owner in order to refute BB & T's breach of contract claim based on lack of notice to BB & T. BB & T accepted this premise, amended its complaint to assert its rights as an intended beneficiary, and altered its breach of contract claim to account for John Hancock's ownership. Both the district court and this court accepted this position expressly. Moreover, the district court accepted this position immediately in analyzing the original summary judgment motions, and again

after our remand, in excluding from trial any argument from BB & T concerning Pacific Life's failure to notify BB & T of the demand for further requirements. Judicial estoppel forbids Pacific Life from now taking the position that BB & T, and not John Hancock, was the policy owner, because that position is inconsistent with the position it "successfully and unequivocally asserted" initially and throughout the prior proceedings. *See Reynolds*, 861 F.2d at 472.

### B.

■ Pacific Life argues that Kentucky law requires mitigation of damages. By "mitigation," Pacific Life means that BB & T should have acquiesced and provided the notarization and corporate seal on Koczot's signature on the assignment to John Hancock *earlier*, before the market had dropped more, so that the loss in value was not as great. Specifically, had BB & T provided the notarization and seal on October 1, 2008, when the policy's cash value was $724,655, the loss would have been only $56,162. BB & T replies that this is not "mitigation."

Two aspects of Pacific Life's argument warrant specific recognition. First, mitigation of damages is a consideration here only if Pacific Life acted unreasonably (if it acted reasonably, BB & T would receive no damages at all). And, second, Pacific Life's contention is that BB & T was legally obliged to capitulate to this unreasonable demand, since that is the only way BB & T could stop the policy's cash value from fluctuating (here decreasing) with the stock market.

"A party claiming damages for breach of contract is obligated to use reasonable efforts to mitigate his damages." *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 852 (Ky.App.2014). But, those efforts "need not be unduly risky, expensive, bur-

densome, or humiliating." *Id.* Here the question is whether Kentucky law would compel the injured party to perform the breaching party's unilateral, unexpected, and unreasonable demand merely to satisfy a duty to mitigate. We think it would not. When a party breaches a contract by unilaterally changing the terms, that is akin to making a new contract and an injured party's "duty to minimize the damages d[oes] not require him to go so far as to make a new contract with" the breaching party. *Ten Broeck Tyre Co. v. Rubber Trading Co.,* 186 Ky. 526, 217 S.W. 345, 346 (1919); *see also Hirsch v. Ga. Iron & Coal Co.,* 169 F. 578, 581 (6th Cir.1909) ("The duty imposed by the equitable rule [requiring the plaintiff's mitigation of damages] must be held within reasonable bounds. It is a rule which has never been regarded as requiring one to yield to a wrongful demand that he may thereby save the wrongdoer from the legal consequences of his own error.").

BB & T demanded a specific sum, based on the plain terms of the contract, and refused to submit to Pacific Life's unreasonable demand. It was neither required nor prudent for BB & T to submit to Pacific Life's unreasonable demand merely to save Pacific Life from the consequences of its own error. BB & T acted reasonably here and mitigation of damages was not applicable.

### C.

■ Pacific Life argues that the district court abused its discretion by imposing pre- and post-judgment interest. BB & T replies that Pacific Life waived this argument.

"A party that fails to appeal an issue waives [it]s right to raise the issue before the district court on remand or before this court on appeal after remand." *JGR, Inc. v. Thomasville Furniture Indus., Inc.,* 550 F.3d 529, 532 (6th Cir.2008) (quotation and editorial marks omitted). When the district court awarded summary judgment to BB & T, with damages of $259,926.33 plus pre- and post-judgment interest, Pacific Life appealed. But in that appeal, it did not raise the issue of pre- or post-judgment interest. Pacific Life has waived its right to raise this now.

### III.

For all of the foregoing reasons, we AFFIRM the judgments of the district court.

STRANCH, Circuit Judge. concurring.

I fully join in this opinion. I agree that the erroneous calculation of post-judgment interest, using the Kentucky statutory rate rather than the federal statutory rate, is waived. To avoid future confusion, however, I write to note that while state law governs the award of pre-judgment interest, it is federal law that controls post-judgment interest pursuant to 28 U.S.C. § 1961(a). *See e.g., Broad Street Energy Co. v. Endeavor Ohio, LLC,* 806 F.3d 402, 410 (6th Cir.2015) (observing that "[f]ederal law governs" the calculation of post-judgment interest); *Estate of Riddle v. So. Farm Bur. Life Ins. Co.,* 421 F.3d 400, 409 (6th Cir.2005) ("In diversity cases in this Circuit, federal law controls postjudgment interest but state law governs awards of prejudgment interest.") (internal quotation marks and citation omitted).