RENDERED: OCTOBER 20, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0101-MR

GRANGE INSURANCE COMPANY                                    APPELLANT


                        APPEAL FROM FAYETTE CIRCUIT COURT
v.                      HONORABLE JULIE M. GOODMAN, JUDGE
                        ACTION NO. 19-CI-01315


GEORGETOWN CHICKEN COOP,
LLC; ANTHONY CRISH; CHAD
GIVENS; COCK-A-DOODLE-DOO,
LLC; PRESTON RESTAURANT "A,"
LLC; AND ROBERT GAUTHIER                                    APPELLEES


OPINION
REVERSING

** ** ** ** **

BEFORE: EASTON, LAMBERT, AND McNEILL, JUDGES.

EASTON, JUDGE: This appeal involves a dispute about insurance coverage,

specifically coverage under an "umbrella" policy. We will refer to the Appellees

collectively as "Roosters," which is the name of the business owned or operated by

the limited liability companies or individuals named as Appellees.[1]  The Appellant, Grange Insurance Company ("Grange") issued two insurance policies for Roosters – a Business Owners' Policy ("BOP"), and a Commercial Umbrella Policy ("CUP").  All agree the BOP provides coverage.  Having reviewed the record, we do not find an ambiguity in the CUP, which does not provide coverage.  We reverse the circuit court and direct entry of a declaratory judgment in favor of Grange.

## FACTUAL BACKGROUND

On the night of January 5, 2019, Joey Lee Bailey ("Bailey"), was served and consumed alcohol at Roosters in Georgetown.  After leaving Roosters, Bailey went to another place called "Horseshoes" in Lexington, where Bailey continued to drink.[2]  Then, during the early morning hours of January 6, 2019, Bailey was driving the wrong direction on Interstate 75.  Bailey's truck hit a vehicle carrying the five-member Abbas family.  All six people were killed.

The estates of the Abbas family filed suit[3] against Roosters and others.  Roosters filed a third-party petition for declaratory judgment against their insurer,

---

[1] Because of the resolution we reach, we need not address Grange's assertion that the circuit court erred in granting summary judgment for certain individuals rather than specified insureds.

[2] Medical records in the file indicate Bailey's post-mortem blood alcohol level was over .30.

[3] This record illustrates violation of Kentucky Rules of Civil Procedure ("CR") 8.01(1) which mandates "a short and plain statement of the claim" made.  The Sixth Amended Complaint contains 342 numbered paragraphs and is 60 pages long.

Grange. Grange then sought a legal determination concerning their insurance coverage under the CUP. Roosters sought summary judgment, which was granted and designated as final and appealable pursuant to CR 54.02. Grange appeals to this Court as a matter of right. For the following reasons, we reverse.

## STANDARD OF REVIEW

When a trial court grants summary judgment in a declaratory judgment action with no bench trial, as it did here, "we use the appellate standard of review for summary judgments." *Foreman v. Auto Club Prop.-Cas. Ins. Co.*, 617 S.W.3d 345, 349 (Ky. 2021) (citation omitted). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Lewis v. B&R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001) (citation omitted).

In this case, the underlying facts and the terms of the applicable policies are undisputed. The remaining interpretation and construction of an insurance contract is a matter of law, which again we review *de novo*. *Auto-Owners Ins. Co. v. Veterans of Foreign Wars Post 5906*, 276 S.W.3d 298, 301 (Ky. App. 2009). As review is *de novo*, "no deference is given to the decisions of lower tribunals, even as to the existence of an ambiguity." *Kentucky Employers' Mutual Ins. v. Ellington*, 459 S.W.3d 876, 881 (Ky. 2015).

# ANALYSIS

Instead of drafting individual word-for-word policies, the process for constructing insurance policies begins with standard provisions in a form policy. The process then relies upon other standard phrases, easily added, or deleted, which serve to add or exclude coverage with identified exceptions. Finally, endorsements may govern whether any provision within the form policy applies. We are required to consider the entirety of the various combined provisions together. KRS[4] 304.14-360.[5] *See Kemper Nat'l Ins. Companies v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869 (Ky. 2002) (applying the substantive provisions of an endorsement to exclusions in the preceding form policy). This traditional approach usually requires careful perusal and comparison by insureds to be sure of their coverage.[6]

By finding an ambiguity, the courts may not rewrite the plain language of a policy examined as a whole. *Pryor v. Colony Insurance*, 414 S.W.3d 424, 430 (Ky. App. 2013), *abrogated on other grounds by Estate of Bramble v.*

---

[4] Kentucky Revised Statutes.

[5] "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, indorsement, or application attached to and made a part of the policy."

[6] In this digital age, one wonders why this practice continues. Policies could arguably be crafted individually as one document rather than through a process of forms and exceptions and endorsements cobbled together. Even so, we must proceed under the law for policy interpretation with the existing practice.

*Greenwich Insurance Company*, 671 S.W.3d 347 (Ky. 2023). In the present case, the circuit court declared an ambiguity in Paragraph 12 of the Summary Judgment at Pages 7-8. The circuit court stated there were two reasonable interpretations from the language but then did not further illustrate how the interpretations are supported when all language of the policy is considered together. The circuit court also made a general observation about umbrella policies. Essentially, the ambiguity declared became contextual by comparing underlying coverage and the overall terms of the "umbrella" policy.

The difficulty flows from the following paragraph in the circuit court's Conclusions of Law:

> In analyzing the contract, the Court also acknowledges that it cannot ignore the purpose of an umbrella policy, that it is created to supplement the underlying policy. Acknowledging that, then, the Court understands that when an insured purchases both an underlying and umbrella policy, the intent is for them to work in concert. There is no purpose for an umbrella policy if not to supplement the underlying policy if exhausted.

The primary insurance for Roosters was provided by Grange with the BOP. Liquor liability coverage was provided by an endorsement to the BOP. No one argues about that coverage. Roosters decided also to purchase the CUP, an umbrella policy with Grange. Policies providing excess coverage include what are often called umbrella policies, but, as in a real-life thunderstorm, some umbrellas

provide more coverage than others: your feet may still get wet with the best umbrella.

The parties cite no case applying Kentucky law addressing conflict between primary coverage and an exclusion in an umbrella policy. We have found no Kentucky case on point. Authorities from other states help provide an answer.

As a general statement, umbrella policies, as one form of excess coverage, follow the primary policy and provide additional coverage. Such policies often provide additional coverage for some claims not in the primary policy. 46 C.J.S. *Insurance* § 1627 (2023). An umbrella is not necessarily a mirror image of the primary coverage. If a mirror image is the intent, the practice of a clear "broad as primary" endorsement could be used. *See, e.g.*, *McDonald's Corp. v. American Motorists Ins. Corp.*, 748 N.E.2d 771, 774 (Ill. App. 2001).

An umbrella policy may have its own exclusions. We find no authority for the proposition that an umbrella cannot exclude additional coverage for certain claims covered by a primary policy. When an umbrella policy is called upon to provide coverage for claims, "an umbrella policy does not automatically drop down; in order for it to do so, none of its exclusions can apply." 46 C.J.S. *Insurance*, *supra*. In support of this statement the author of this CJS section cited *Boggs v. Camden-Clark Memorial Hospital Corporation*, 693 S.E.2d 53 (W. Va.

2010).  This case includes a collection of cases independently examining exclusions in umbrella policies.  *Id.* at 69 n.28.

One of the cases collected in *Boggs* is *Weitz v. Allstate Insurance Company*, 642 A.2d 1040 (N.J. Super. Ct. App. Div. 1994).  In *Weitz*, the court held an umbrella policy which excluded injuries to members of the insured's household prevented coverage even though the claim was covered by a primary auto liability policy.  The court further explained:

> The [umbrella] policy should not be read as simply an endorsement to basic policies to raise their dollar limits. It provides coverages unavailable in auto and homeowners' policies, for example, for defamation, malicious prosecution, false arrest, invasion of privacy, and violation of civil rights.  As its coverages depart from auto and homeowners' policies, it should not be a surprise that its exclusions are also different.

*Id.* at 1041.

In the specific context of an umbrella policy with a liquor liability exclusion, we have found only one unpublished case addressing an umbrella exclusion of liquor liability, even though a primary policy provided such coverage.  *Berkhouse v. Great American Assurance Company*, No. 13-0264, 2013 WL 6152414 (W. Va. Nov. 22, 2013) (umbrella exclusion upheld).  While the circumstances of any cited case may be distinguishable, the general principle applies – an umbrella policy may exclude additional coverage for specific claims

covered by a primary policy. With this understanding of this general principle, we should again examine the undisputed facts of this case regarding the CUP.

The first paragraph of the CUP at issue states: "Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered." The body of the policy contains Section I – Coverages, Subsection 2. Exclusions, with subsection c. Liquor Liability. This Section I 2 c excludes Liquor Liability but makes an exception for liability arising from the business of the insured of serving alcohol. The language then indicates the umbrella coverage will follow the primary policy, "unless otherwise directed by this insurance."

An otherwise direction is provided by Endorsement CU 47:

**Endorsement                              CU 47**

**LIQUOR LIABILITY EXCLUSION**

**This Endorsement Changes The Policy. Please Read It Carefully**.

This Endorsement modifies insurance provided under the following:

**COMMERCIAL LIABILITY UMBRELLA PART**

Exclusion c. of Paragraph **2. Exclusions of SECTION I- Coverage A - Bodily Injury and Property Damage Liability** is replaced by the following:

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use or alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

The words, as they appear above, except for the last sentence, repeat the already existing language in the same section of the underlying umbrella policy, but most of the additional two paragraphs, which are clearly part of Section I 2 c. in the body of the policy, is gone.

The word replace has an unambiguous meaning. Merriam-Webster defines replace as, "1. To restore to a former place or position; 2. To take the place of especially as a substitute or successor; 3. To put something new in the place of." *Replace*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/replace (last visited Oct. 16, 2023). The CU 47 endorsement replaced the entirety of Section I 2 c of the policy, intentionally deleting the paragraphs which otherwise would have provided coverage.

The parallel wording of the endorsement and original document, along with the word "replace," plainly indicate that the only reason this endorsement existed was to remove the paragraphs in the policy form which otherwise would have followed the more limited language in CU 47. The longer version of this section of the policy was to be replaced in its entirety by the shorter version. The shorter and more limited language in CU 47 was intended to be the full and complete language of Section I 2 c.

It does not make sense for CU 47 to be considered a supplement for the extra language found in the form policy, because the plain language of CU 47 was to replace all the original language. The text left was essentially the same as the text replaced except for the deleted paragraphs. Finding no ambiguity within the CUP itself and recognizing an umbrella does not have to mirror a primary policy, there is no ambiguity when the entire CUP is read. The replacement of the entire section modified the overall coverage of the policy.

The word replace is not technical. When batteries run down, we replace them. When we do so, we do not chop up parts of the old batteries and graft them to newer parts. The old batteries are removed completely, and the new ones replace them. The same is true with the policy language here. The entire section in the form policy was removed and replaced by the language of the endorsement.

Without an ambiguity, the expectations of the insured do not control. *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003). This record does not tell us whether or why Roosters did or did not seek the additional umbrella coverage for liquor liability. The circuit court and this Court could equally assume Roosters just thought there would be more coverage because of their idea of an "umbrella." But they could have decided not to pay the cost for such additional coverage. Grange may have decided to limit its liability by not extending liquor liability by an umbrella.

But courts are not in the business of assumptions. Rather, we apply facts to the law. None of these referenced assumptions have evidentiary support in the record. But it is at least curious that there was no response to Grange's clear denial of umbrella coverage for two years – no letter or other communication documented to suggest anyone with Roosters felt misled or confused about the lack of liquor liability coverage in the umbrella they had purchased.

## CONCLUSION

For the foregoing reasons, we REVERSE the Fayette Circuit Court and direct a declaratory judgment that the CUP does not provide coverage and thus also does not impose a duty under the CUP to defend the claims in this case.

-11-

LAMBERT, JUDGE, CONCURS.

McNEILL, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

McNEILL, JUDGE, DISSENTING: I respectfully dissent. First, I believe that the circuit court reached the proper result with sufficient explanation. The record reflects that the trial judge has been immersed in this difficult case for years, and is certainly well-acquainted with the underlying issues and facts. Moreover, the trial court observed that "[i]n analyzing the contract, the Court *also* acknowledges that it cannot ignore the purpose of an umbrella policy, that it is created to supplement the underlying policy." (Emphasis added.) Although the majority cites this finding, it does not discuss the remainder of the circuit court's reasoning. In any event, even if the underlying judgment lacked support, our *de novo* standard requires this Court to conduct a fresh review of the matters presented, without reliance upon the underlying judgment. And like our standard of review, the substantive law is clear, "[i]f the contract language is ambiguous, it must be liberally construed to resolve any doubts in favor of the insured." *Wolford v. Wolford*, 662 S.W.2d 835, 838 (Ky. 1984) (citation omitted).

As to the merits, the majority reverses the circuit court on the basis that there is no ambiguity in the relevant contractual provisions. In support, the majority discusses umbrella coverage generally, supported in part by citation to non-binding authority. However, the present issue is not novel. And the question

posed is purely legal – is there ambiguity? I find in the affirmative. Although, I acknowledge that reasonable minds may differ – as occurred here. More precisely, four judges have reviewed this matter. Two have found ambiguity, and two have not. While the latter conclusion mandates the present disposition, the disagreement between the reasonable minds having pondered this issue is, at least, a facial indication of ambiguity. Yet, the ambiguity here is more than cosmetic.

For example, the majority does not address the exception to the exclusion language also contained in the CUP. In other words, negation language replaces such prior language, but says nothing of the affirmative language following the original exclusion. Unless it is made abundantly clear that all such language abrogates all prior language, which was not the case here, there is ambiguity. This is essentially the same reason advanced by the circuit court. And when buttressed with the circuit court's relevant observation that the purpose of this umbrella policy is to supplement the underlying policy, I agree with the circuit court's conclusion that "two reasonable interpretations could be made of the language . . . ." Therefore, I would affirm.

BRIEFS FOR APPELLANT:

Robert L. Steinmetz
Louisville, Kentucky

BRIEF FOR APPELLEES:

Donald L. Cox
William H. Mooney
Louisville, Kentucky

-13-