**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**POWELL–WALTON–MILWARD, INC., Defendant–Appellant.**

No. 92–5905.

United States Court of Appeals, Sixth Circuit.

Argued April 29, 1993.

Decided April 4, 1994.

Gordon W. Moss (argued and briefed), Hays, Moss & Lynn, Lexington, KY, for plaintiff-appellee.

Mark T. Hayden (argued and briefed) and Whitney J. Wallingford, Greenebaum, Doll & McDonald, Lexington, KY, for defendant-appellant.

William P. Emrick (briefed), McKenzie, Woolery & Emrick, Ashland, KY, for amicus curiae.

Before: MERRITT, Chief Judge; and KEITH and SUHRHEINRICH, Circuit Judges.

The Supreme Court of Kentucky has responded to this Court's certification of two questions of law in this case. Based upon

the answers given to the two questions of law presented to the Kentucky Supreme Court, the judgment of the District Court in this case is REVERSED and the case RE-MANDED to the District Court with instructions to apply the law as defined by the Kentucky Supreme Court and for further proceedings consistent with the certification opinion given by the Kentucky Supreme Court. 870 S.W.2d 223.

ENTERED BY ORDER OF THE COURT.

## APPENDIX

## SUPREME COURT OF KENTUCKY

93–SC–418–CL

### ST. PAUL FIRE & MARINE INSURANCE COMPANY

v.

### POWELL–WALTON–MILWARD, INC.

ON REQUEST FOR CERTIFICATION OF THE LAW FROM UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

### CERTIFICATION OF THE LAW

Inasmuch as the issues addressed herein are likely to arise again in both state and federal courts in Kentucky, the United States Court of Appeals for the Sixth Circuit requests certification of the law as to the following questions:

(1) When an insurer (St. Paul) of an insurance broker (Powell–Walton–Milward) issues a liability insurance policy which promises coverage to the insurance broker for losses resulting from "an error, omission or negligent act committed in the ... sale and placement of insurance," but which also excludes from coverage claims by customers of the insurance broker "that result from the inability of an insurance company ... to pay all or part of insured claims," does the exclusion unambiguously deny coverage to the insurance broker who suffers losses as a result of negligently recommending an insurance company that subsequently becomes insolvent?

(2) If such an exclusion is given effect, does it violate the public policy of the state of Kentucky, defeating the express purpose of KRS 304.9–105 (insurance brokers to carry liability insurance "for the protection of the people of this state")?

The challenges giving bases to the issues herein arise from the following statement of facts and nature of controversy:

Powell–Walton–Milward, Inc. (P–W–M) is an insurance agency and was insured by St. Paul Fire & Marine Insurance Co. under a general insurance policy that promised the following: "We'll pay amounts you and other protected persons are legally required to pay to compensate others for loss that results from an error, omission or negligent act committed in the conduct of your insurance business." Insurance business is then defined to include "the sale and placement of insurance." P–W–M is required by KRS 304.9–105(5) to carry such insurance or to take equivalent alternative measures to protect customers against any negligence on its part. P–W–M's policy also contained an exclusion: "We won't cover claims that result from the inability of an insurance company, joint underwriting association, or any similar entity to pay all or part of insured claims."

P–W–M recommended to several of its clients that they join a self-funded insurance trust called National Business Association Trust ("the Trust") for the purpose of providing health and medical insurance benefits to their employees. In 1990, the Trust stopped paying medical claims filed by employees of its member trustees, including the clients of P–W–M to whom P–W–M had recommended membership in the Trust. The Trust fired all its employees and closed its doors. The Kentucky Department of Insurance seized the books of the Trust, and assumed all the contractual rights and causes of action of the Trust. In its status as liquidator of the Trust, the Department of Insurance is currently marshalling the assets of the Trust to pay its claims.

The Trust members who were clients of P–W–M asserted claims against it for claims filed by their employees against the Trust that were not paid. P–W–M settled the claims and then asserted claims against St.

Paul under its policy, contending that the claims it had settled with its clients resulted from its negligent investigation and recommendation of the Trust. St. Paul denied the claim on the ground that P–W–M's losses were a result of the Trust's insolvency, not P–W–M's errors or omissions, and brought a declaratory judgment action before Judge Forester in the U.S. District Court for the Eastern District of Kentucky. Judge Forester agreed with St. Paul and granted its motion for summary judgment. The next day another U.S. District Court in the Eastern District of Kentucky, Judge Wilhoit presiding, issued a contrary opinion in another case, involving an identical policy issued by St. Paul, this time to an agency called Putnam Agency, Inc. Judge Wilhoit held that the policy is susceptible to two different interpretations, depending on whether the agency's losses are considered to be a consequence of its negligence in deficiently investigating the Trust and recommending it to its clients, or a consequence of the Trust's "inability to pay." The court then held that, under Kentucky law, where a policy is susceptible to two different interpretations, the interpretation favorable to the insured is adopted.

The case therefore turns on whether the two clauses of the policy, when read together, create an ambiguity which must be construed in favor of the insured. Alternatively, in the case before Judge Wilhoit, one party argues that the exclusion should be construed to violate the public policy of the Commonwealth of Kentucky under the reasoning expressed in *Beacon Ins. Co. of America v. State Farm Mut. Ins. Co.*, Ky., 795 S.W.2d 62 (1990), because KRS 304.9–105(5) protects Kentucky citizens by requiring insurance brokers to carry liability insurance, and because the exclusion at issue denies coverage in cases where losses result from negligent recommendation of an insolvent insurer, leaving citizens unprotected under those circumstances.

We determine that the literal meaning of the coverage phrase "loss that results from an error, omission or negligent act committed in the ... sale and placement of insur-

ance" when considered with the phrase which excludes coverage claims "that result from the inability of an insurance company ... to pay all or part of insured claims" is susceptible to two reasonable meanings. St. Paul, on one hand, maintains that although the claims asserted by customers against P–W–M sound in tort for the negligence of P–W–M and failing to adequately investigate the Trust, the injury giving rise to such claims was the inability of the Trust to pay the claims for medical expenses due to the insolvency of the Trust.

The parties acknowledge that the Trust was not a licensed or authorized insurance business in the Commonwealth of Kentucky. The memorandum opinions in both *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.* (the Lexington Division case) and *St. Paul Fire & Marine Ins. Co. v. Putnam Agency, Inc.* (the Ashland Division case) are before this court. It is noted that the clients of P–W–M who became members of the insurance trust have an uncertain exposure to potential and sizable liability, exceeding their own client's medical expenses.

It should be recognized that our determination of ambiguity follows a thread of continuity which originated with either an omission or error on the part of P–W–M to ascertain the general legal status, viability, and accountability of the Trust. The alleged negligent failure to investigate the Trust and relate fully to P–W–M's clients such status would presumably have avoided a business relationship between the two.

The coverage afforded by St. Paul's policy loses all effect when it becomes subservient to the exclusion, i.e., if the exclusion should prevail over the circumstances of this case. It goes without saying that if an insurer fails to pay a claim it may, in time, become insolvent without the occurrence of an error on the part of the recommending third party.

The policy, considered as a complete instrument, reflects the exclusionary words, "We won't cover claims that result from the inability of an insurance company ... to pay

all or part of insured claims." The literal meaning of the phrase, clear at this point, revolves into a patent conflict or is susceptible to two meanings at the time it is considered with the insuring phrase of the agreement which covers amounts "to compensate others for loss that results from an error, omission or negligent act committed in the conduct of your insurance business." The words in the phrase, as urged by St. Paul, can be read to mean that in spite of any wrongful act resulting in or contributing to an inability to pay, inability to pay could exist without a wrongful act having been committed. There is, in such an instance, a repugnancy between the two clauses, especially where one phrase expresses the chief object and purpose of the contract. Thus, where the provisions may conflict, the contract shall be resolved to afford maximum coverage. Where an exclusion is susceptible to two reasonable interpretations, the interpretation favorable to the insured is adopted. *Foster v. Allstate Ins. Co.*, Ky.App., 637 S.W.2d 655 (1981).

The rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract. Neither should a nonexistent ambiguity be utilized to resolve a policy against the company. We consider that courts should not re-write an insurance contract to enlarge the risk to the insurer. *U.S. Fidelity & Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31 (6th Cir.1988).

An ambiguity may either appear on the face of the policy or, in this case, when a provision is applied to a particular claim.

Although insofar as the Department of Insurance is currently marshalling the assets of the Trust to pay its claims, there may be no ultimate inability to pay claims by the Trust, but such is purely conjecture.

Any limitation on coverage or an exclusion in a policy must be clearly stated in order to apprise the insured of such limitations. Stated otherwise, not only is the exclusion to be carefully expressed, but, as in this case, the operative terms clearly defined. We are impelled to conclude that the insurer in such an errors and omissions contract, as here, where the parties have unequal bargaining power, is ultimately responsible for the policy language and for clearly and explicitly excluding uncovered risks. It would seem, obviously, a relatively simple matter for St. Paul to have written its limitation expressly to exclude inability to pay, irrespective of a wrongful act or not.

As long as coverage is available under a reasonable interpretation of an ambiguous clause, the insurer should not escape liability, and the exclusionary provision addressed herein may be subject to more than one good faith interpretation. *See St. Paul Fire & Marine Ins. Co. v. Cohen–Walker, Inc.*, Ga. App., 320 S.E.2d 385 (1984) and *St. Paul Fire & Marine Ins. Co. v. Molton, Allen & Williams Corp.*, Ala., 592 So.2d 199 (1991). As to the manner of construction of insurance policies, Kentucky law remains clear that exclusions are to be narrowly interpreted and all questions resolved in favor of the insured. *Eyler v. Nationwide Mut. Fire Ins. Co.*, Ky., 824 S.W.2d 855 (1992). Doubt as to the coverage of a policy should be resolved in favor of the insured. *Aetna Life & Cas. Co. v. Layne*, Ky.App., 554 S.W.2d 407 (1977). Since the policy is drafted in all details by the insurance company, it therefore must be held strictly accountable for the language used. *Eyler, supra.*

A policy of insurance is to be construed liberally in favor of the insured and if, from the language, there is doubt or uncertainty as to its meaning, and it is susceptible to two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted. *Koch v. Ocean Accident & Guar. Corp.*, Ky., 230 S.W.2d 893 (1950).

Application of the exclusionary provision in the present context of this case would be contrary to the long-standing principle that

such exclusion should be strictly construed to make insurance effective. *State Auto. Mut. Ins. Co. v. Trautwein,* Ky., 414 S.W.2d 587 (1967).

As to the second question posed herein, we hold that the exclusion clause of the errors and omissions policy issued by St. Paul does not violate the public policy of the Commonwealth of Kentucky, thereby defeating the purpose of KRS 304.9–105. This statute enumerates the general qualifications required for a permanent insurance agent or solicitor license. The exclusion appearing in St. Paul's policy does not render an agent uninsured to the complete degree as did the exclusion provisions referred to in *Beacon, supra. Beacon* construes the Motor Vehicle Reparations Act as predicated upon a forceful expression of public policy. To the contrary, KRS 304.9–105 relates to the qualifications and standards necessary for insurance licensing, i.e., age, residency, reputation, education, course completion, success of examination, and financial responsibility. There is no appearance in this case of public policy considerations that are applicable.

The legislature, with regard to this statute, has not lent emphasis to the policy behind KRS 304.9, et seq. nor, in setting forth requirements, has it specified that there be no exclusions from minimum coverage. We do not find that the exclusion, without its ambiguity, eliminated the minimum requirements of the statute. *See Bishop v. Allstate Ins. Co.,* Ky., 623 S.W.2d 865 (1981).

The law is so certified.

STEPHENS, C.J., LAMBERT, REYNOLDS, SPAIN, STUMBO and WINTERSHEIMER, JJ., concur.
LEIBSON, J., concurs in result only.

ATTORNEY FOR MOVANT:

Gordon Moss
Hays, Moss & Lynn
267 West Short Street
Lexington, KY 40507

ATTORNEY FOR RESPONDENT:
Mark T. Hayden
Greenebaum, Doll & McDonald
1400 Vine Center Tower
P.O. Box 1808
Lexington, KY 40593