CLAY, Circuit Judge,
concurring in part and dissenting in part.
I concur with the majority opinion’s conclusion that the stacking of Defendant’s uninsured/underinsured motorist (“UM/UIM”) coverage is inappropriate. I also agree that we have no need to certify the questions on appeal to the Kentucky Supreme Court. But on the question of whether UM/UIM coverage should be imputed to Defendant’s umbrella policy, my reading of Kentucky law and application to the facts of this case require me to part ways with the majority’s approach.
There is an air of reflexiveness to the district court’s analysis of the Master Plan, and while the majority’s opinion is anything but reflexive, I believe that the majority has given short shrift to the oft-repeated, “fundamental” rule of Kentucky insurance law that insurance contracts “should be liberally construed and any doubts resolved in favor of the insured.” Dowell v. Safe Auto Ins. Co., 208 S.W.3d 872, 877-78 (Ky.2006) (quoting Davis v. Am. States Ins. Co., 562 S.W.2d 653, 655 (Ky.Ct.App.1977)); see, e.g., Ky. Farm Bureau Mut. Ins. Co. v. McKinney, 831 S.W.2d 164, 166 (Ky.1992); Yates v. Shelter Mut. Ins. Co., No. 2010-CA-000022-MR, 2011 WL 3628866, at * 1 (Ky.Ct.App. Aug. 19, 2011). It is ambiguous whether the Master Plan is a single policy with multiple components or multiple policies sold together for practical reasons. Under Kentucky law, that ambiguity resolves this issue. Therefore, I respectfully dissent.
I. Legal Framework
As the majority opinion explains, Defendant bought a $1,000,000 umbrella policy when he purchased the “Atlantic Master Plan Policy” (“Master Plan”), and he contends that the umbrella policy is a standalone unit to which the UM/UIM coverage requirement in Kentucky Revised Statutes (KRS) § 304.20-020(1) must be applied. If the Master Plan is a single policy, then the UM/UIM coverage Defendant bought under the Master Plan satisfies § 304.020(l)’s requirement that every automobile insurance policy be accompanied by UM/UIM coverage. By contrast, if the Master Plan is a bundle of free-standing policies sold together for practical purposes, then the umbrella policy is freestanding and UM/UIM coverage must be imputed to it. My disagreement with the majority opinion regards its conclusion that the Master Plan was indisputably a single policy, from which the majority concludes that UM/UIM coverage need not be imputed to Defendant’s umbrella policy. In my view, a close examination of both Kentucky law and the Master Plan demonstrates that the majority’s characterization of the Master Plan as a single policy is far from clear. And Kentucky law requires that this lack of clarity weigh against the insurer.
As the majority points out, KRS § 304.20-020(1) prohibits an automobile insurance policy from being issued without UM coverage or a written waiver of said coverage.[1] KRS § 304.20-020(1); see Me *462 ridian Mut. Ins. Co. v. Siddons, 451 S.W.2d 831, 833 (Ky.1970). Pursuant to § 304.20-020(1), if an automobile liability policy does not contain UM coverage or is not accompanied by a written waiver, then Kentucky courts reform the policy and impute UM coverage into the policy. Id. An umbrella policy is an “automobile policy” for purposes of § 304.20-020(1). State Farm Mut. Auto. Ins. Co. v. Marley, 151 S.W.3d 33, 36 (Ky.2004) (“An umbrella policy was purchased to serve as an extension of the automobile policy limits and any distinction between the automobile liability and an umbrella liability policy is a distinction without a difference.”).
The majority gives too little weight to the rules governing Kentucky insurance contracts that require the insurance company, and not the insured, to bear the loss of any ambiguity in the contract. Under the “reasonable expectations” doctrine, an insured is entitled to recover when, analyzed objectively, the insured “bought and paid for an item of insurance coverage” and “may reasonably expect it to be provided.” Marcum, v. Rice, 987 S.W.2d 789, 791 (Ky.1999); see Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 565 (6th Cir.2008). As adhesion contracts, Kentucky courts liberally construe insurance contracts in favor of coverage. Yates, 2011 WL 3628866, at * 1; State Farm Mut. Auto. Ins. v. Slusher, 325 S.W.3d 318, 322 (Ky.2010). The insurance company is held “strictly accountable” for the contract language when the company drafts the contract, as it did here. St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc., 870 S.W.2d 223, 227 (Ky.1994). To be sure, the Kentucky courts caution that “a liberal interpretation is not synonymous with a strained one” and, therefore, that “[ijnsurance policies, like statutes, must receive a sensible construction.” K.M.R. v. Foremost Ins. Grp., 171 S.W.3d 751, 753 (Ky.Ct.App.2005); Simpsonville Wrecker Serv. Inc. v. Empire Fire & Marine Ins. Co., 793 S.W.2d 825, 829 (Ky.Ct. App.1989). But any conflict in the contract’s provisions is “resolved to afford maximum coverage.” St. Paul Fire & Marine Ins. Co., 870 S.W.2d at 226.
II. Analysis
The Master Plan equivocates about whether it is a bundle of independent policies or a single policy with many coverage components. The Master Plan’s documents refer to the underlying coverage units as separate policies on several occasions. For example, in explaining the scope of the umbrella coverage, the policy documents referring to Defendant’s umbrella coverage state that:
[tjhis coverage is over and above your other insurance. On your Coverages Page, you’ll find a Schedule of Underlying Insurance that describes your other liability policies. Any policy named on *463 that schedule is considered “underlying insurance.”
As another example, the Master Plan’s rules and regulations pertaining to umbrella coverage limit the liability insurance for “[t]his policy” to $1,000,000, and the rules refer to required underlying coverages as “primary policies.” The rules also set the price of $1,000,000 in umbrella coverage at a $120 “Rate per Policy.”
The description of the Master Plan given by Christopher Donahue, Assistant Vice President of Portfolio Management for Plaintiff, supports the conclusion that the underlying Master Plan coverages were independent policies. His deposition makes it clear that an insured had discretion as to whether to purchase the umbrella policy as part of the Master Plan and that doing so would increase the Master Plan’s cost. Indeed, whether or not Donahue uses the term “policy,” his deposition supports the proposition that each component part of the Master Plan was treated as a separate insurance unit which the insured had discretion to purchase. As he explained, the Master Plan could be tailored through endorsement, thus allowing the insured to decide which coverages he preferred to buy. Additionally, Donahue testified that Plaintiff writes umbrella policies for insured persons who have underlying policies with other insurance companies. In those situations, Plaintiff provides the same umbrella policy and uses the same “Personal Umbrella Endorsement Form” to execute the policy. The malleable nature of the Master Plan’s components, and the insured’s ability to buy some coverages and not buy others, supports the conclusion that each underlying coverage stands alone as its own policy.
To be sure, at times the Master Plan refers to itself as a single policy and the underlying coverage units as coverage components. The policy documents state that the “Master Plan is designed to meet most of your personal insurance needs under one policy.” The Master Plan is memorialized in a 29-page document divided into four parts, respectively entitled “Important Information about your Atlantic Master Plan” (Part I), ‘Your property coverage” (Part II), ‘Your liability coverage” (Part III), and “Terms and conditions” (Part IV). Under ‘Your liability coverage” (Part III), the Master Plan includes provisions entitled “Uninsured/Underin-sured motorists’ coverage” and “Personal umbrella coverage.” Atlantic charged a single premium for the Master Plan. The Master Plan also guarantees payment for any interest accrued on a judgment against the insured covered “by this policy,” plainly referring to the entire Master Plan. These portions of the policy suggest that it is a single policy with multiple coverage components.[2]
*464 We need not decide which characterization of the Master Plan is more appropriate. Simply recognizing that a reasonable person could characterize the Master Plan as a bundle of multiple freestanding policies or a single policy resolves this case. Marcum, 987 S.W.2d at 791. The Georgia Court of Appeals concluded that the Master Plan was a bundle of independent policies in a case similar to this one. See Abrohams v. Atlantic Mutual Insurance Agency, 282 Ga.App. 176, 638 S.E.2d 330 (2007). In Abrohams, the parents of a child injured in an automobile collision purchased a policy from Atlantic Mutual identical to the one Defendant purchased. Id. at 331. The parents recovered from Atlantic Mutual in the amount provided by the UM coverage accompanying their automobile policy, but the recovery fell short of the suffered loss. Id. Like Kentucky, Georgia law requires an automobile policy to carry UM coverage unless the insured waives the coverage in writing. See Ga. Code (OCGA) § 33-7-11.
The Georgia Court of Appeals agreed with the parents. Addressing “the narrow issue of whether an umbrella policy is subject to the requirements of OCGA § 33-7-11,” the court answered in the affirmative. Id. at 332. The court noted that the Georgia statute defining “vehicle insurance” did not exclude umbrella policies from its scope. Id. at 332 (quoting OCGA § 33-7-9). The court also reasoned that § 33-7-11 allowed no exceptions from the UM requirement and that the UM statute was “remedial in nature and must be broadly construed to accomplish the legislative purpose.” Id. at 332-33 (internal citations and quotations omitted). Largely on the basis of the latter two rules, the Georgia Court of Appeals concluded that § 33-7-11 applied to the umbrella policy and that the parents were entitled to UM coverage from the policy. Id. That court considered it so obvious that the Master Plan was a bundle of independent policies that it proceeded upon that conclusion without even considering the issue at length. See id. at 331 (explaining that plaintiffs were in insured “under an Atlantic Mutual insurance policy comprised of a homeowners policy, an automobile policy, a valuables policy, and a personal umbrella policy.” (emphasis added)). Of course, we are not bound by the Georgia Court of Appeals’ conclusion, but the fact that a panel of judges on another court facing the same issue considered it so clear that the Master Plan is a bundle of independent policies demonstrates a disagreement that reasonable people could have on this issue.
Under Kentucky law, that disagreement requires us to construe the Master Plan in favor of coverage. Slusher, 325 S.W.3d at 322. In the face of an ambiguity like the characterization of the Master Plan, Kentucky law instructs that “[ojnly an unequivocally conspicuous, plain and clear manifestation of the company’s intent to exclude coverage will defeat” an insured’s reasonable expectation of coverage. Brown v. Ind. Ins. Co., 184 S.W.3d 528, 540 (Ky.2005). Section 304.20-020(1) provides a mechanism for the insurer to make “an unequivocally conspicuous, plain and clear manifestation” to disclaim UM/UIM coverage for the Master Plan’s umbrella policy in the form of a written waiver in which the insured rejects coverage. It was incumbent on Plaintiff to require Defendant to sign such a waiver when he bought the Master Plan. Plaintiff failed to do so. In my view, Kentucky law requires Plaintiff to suffer the consequence of that failure.

. Section 304.20-020(1) states in full: "No automobile liability or motor vehicle liability policy of insurance insuring against loss re- *462 suiting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in KRS 304.39-110 under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided that the named insured shall have the right to reject in writing such coverage; and provided further that, unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him or her by the same insurer.”

. The majority considers the failure of the "Coverages Page" appended to the Master Plan to mention UM/UIM coverage as evidence that UM/UIM coverage should not be imputed to Defendant’s umbrella policy. This argument overlooks Meridian Mutual Insurance Company v. Siddons, in which the Kentucky Supreme Court interpreted a policy that included a provision limiting UM the coverage to the amount agreed upon in the UM coverage that the insured purchased. Siddons, 451 S.W.2d at 834. The court concluded that the provision violated public policy because the state legislature, in a predecessor statute to § 304.20-020(1), required the parties to execute a written waiver in order for an automobile policy not to provide for UM/ UIM coverage. Indeed, any result other than the one reached in Siddons would eviscerate § 304.20-020(1) by allowing the insurer to simply disclaim coverage instead of obtaining a written waiver as the statute requires. Considering the absence of UM/UIM coverage on the Master Plan's "Coverages Page,” as the majority does, similarly weakens the effect of the statute.