RENDERED: OCTOBER 6, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0384-MR

CITY OF NEWPORT, KENTUCKY;
HOWARD NIEMEIER; MARK
BRANDT; NORM WAGNER; PAT
MOORE; RICK SEARS; ROBERT
BRADFORD; SARAH TOLLE (A/K/A
SARAH DESENTZ); AND TOM
FROMME                                                            APPELLANTS


                    APPEAL FROM CAMPBELL CIRCUIT COURT
v.            HONORABLE JULIE REINHARDT WARD, JUDGE
                         ACTION NO. 20-CI-00489


WESTPORT INSURANCE
COMPANY, AS SUCCESSOR TO
COREGIS INSURANCE COMPANY                                          APPELLEE

AND

NO. 2022-CA-0415-MR

JEREL COLEMON, AS
ADMINISTRATOR AND PERSONAL
REPRESENTATIVE OF THE ESTATE
OF WILLIAM VIRGIL                                                   APPELLANT

v.  HONORABLE JULIE REINHARDT WARD, JUDGE
ACTION NO. 20-CI-00489


WESTPORT INSURANCE
COMPANY, AS SUCCESSOR TO
COREGIS INSURANCE COMPANY                                    APPELLEE



OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, JONES, AND LAMBERT, JUDGES.

EASTON, JUDGE:  This case is about insurance coverage for a personal injury,

specifically a wrongful prosecution resulting in decades of imprisonment.

Westport Insurance Company ("Westport") filed this action in the Campbell

Circuit Court seeking a declaratory judgment that Westport had no contractual

obligation to defend the City of Newport and past and present members of the

Newport Police Department ("NPD") (collectively the "Newport Insureds") from a

lawsuit filed in federal court by William Virgil ("Virgil").  The circuit court

granted summary judgment to Westport.  Both the Newport Insureds and Virgil

appeal.  While Virgil suffered damages during Westport's policy periods, the

personal injury which caused those damages occurred ten years before the

Westport policy periods.  As a result, the Westport policies do not provide

coverage, and Westport does not have a duty to defend.  We affirm.

## FACTUAL AND PROCEDURAL HISTORY

The controlling facts in this case are undisputed.  In 1987, Virgil[1] was

charged by the NPD with the murder of Retha Welch.  Virgil was convicted and

spent the next twenty-eight years in prison[2] before DNA testing revealed that no

physical evidence on the murder victim's body tied the crime to Virgil.  The

Campbell County Grand Jury declined to reindict Virgil.

Finally free from his incarceration, Virgil filed a federal lawsuit[3]

("Virgil Lawsuit") pursuant to 42 U.S.C.[4] § 1983[5] against the Newport Insureds in

2016.  Virgil claimed his constitutional rights were violated because the NPD

arrested and charged him, when the Newport Insureds knew probable cause did not

---

[1] Virgil died on January 2, 2022.  The administrator of Virgil's Estate, Jerel Colemon, was subsequently substituted as the proper party in the circuit court.

[2] Virgil's incarceration after his conviction was with the Kentucky Department of Corrections, an agency of the state government.  We are not aware of the status of any claim which may have been made against the state itself to the extent permitted by law.

[3] *Virgil v. City of Newport*, No. 2:16-cv-00224-DLB-EBA, 2021 WL 4494610 (E.D. Ky. Sep. 30, 2021).

[4] United States Code.

[5] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

exist to charge Virgil for the murder. Virgil also offered proof that police officers fabricated evidence against him.

The Newport Insureds tendered their defense to the different companies which insured them from 1987-2015. National Casualty Company (insurer for the 1987 policy period) and the Kentucky League of Cities (insurer from 1988 to 1996) accepted the tender.

In 2017, the Newport Insureds tendered the Virgil Lawsuit to Westport for defense and indemnification. Westport, as successor to Coregis Insurance Company, had issued a policy ("Westport Policy") to the Newport Insureds with a policy period of July 1, 1997 to July 1, 1998. This policy, as modified by endorsement, provided liability coverage per "occurrence" for law enforcement liability ("LEL"). The Westport Policy was renewed for the July 1, 1998 to July 1, 1999 policy period, and again renewed for the July 1, 1999 to July 1, 2000 policy period.

In response to the Newport Insureds' tender of defense, Westport's claims expert sent a letter denying coverage for the Virgil Lawsuit. In this letter, Westport explained "coverage is not afforded under the Westport policy for the Virgil lawsuit because no triggering event occurred during the Westport policy period." Westport determined that, since Virgil was charged in 1987 and convicted in 1988, the Virgil Lawsuit did not allege an offense or occurrence

causing a "personal injury" during any of the policy periods between July 1, 1997 and July 1, 2000. Westport asserted that, for purposes of triggering coverage, personal injury arising from a wrongful prosecution takes place at the time charges were filed. Westport then further asserted their policies were not triggered because they were not in place at that time, and no additional trigger of an offense or occurrence causing a personal injury occurred during Virgil's continued incarceration.

In the meantime, the Newport Insureds had also tendered their defense to St. Paul Guardian Insurance Company, which insured the Newport Insureds from July 1, 2007 to July 1, 2010; The Phoenix Insurance Company, St. Paul's successor, which insured the Newport Insureds from July 1, 2010 to July 1, 2012; The Travelers Indemnity Company of America, another successor, which insured the Newport Insureds from July 1, 2012 to July 1, 2013 (collectively "Travelers"). Travelers decided to both defend the Newport Insureds and file a federal declaratory judgment action to determine their coverage obligations.[6] Similar to Westport's argument here, Travelers argued no defense was owed under their LEL policies as Virgil's personal injury did not take place during the applicable policy periods.

---

[6] *St. Paul Guardian Ins. Co. v. City of Newport*, No. 2:17-cv-00115-DLB-CJS (E.D. Ky. Jul. 31, 2019).

As to the Travelers policies applied in this separate litigation, the United States District Court for the Eastern District of Kentucky ruled in favor of Travelers.[7] But the Sixth Circuit Court of Appeals reversed, finding that Virgil's "continuous and ongoing injury" triggered coverage under the Travelers LEL forms. *St. Paul Guardian Ins. Co. v. City of Newport*, 804 F. App'x 379, 384 (6th Cir. 2020).

Westport was monitoring the Travelers litigation. Soon after the *St. Paul* ruling, Westport wrote to the Newport Insureds asserting it would not change its coverage position. Westport maintained the Virgil Lawsuit does not allege a "personal injury" as defined that occurred during Westport's policy periods and thus Westport's LEL coverage was not triggered.

Even so, Westport decided to defend the Newport Insureds in the Virgil Lawsuit, while reserving its rights to seek a judicial determination of Westport's coverage obligations. The Newport Insureds agreed to Westport's participation in their defense. Westport filed this declaratory judgment action in the Campbell Circuit Court asserting it had no obligation to defend or indemnify the Newport Insureds.

---

[7] *St. Paul Guardian Ins. Co. v. City of Newport*, 416 F. Supp. 3d 671 (E.D. Ky. 2019), *reversed by St. Paul Guardian Ins. Co. v. City of Newport*, 804 F. App'x 379 (6th Cir. 2020).

Westport also named Virgil in the declaratory judgment action as he may have been deemed a necessary party. Virgil attempted to remove Westport's action to federal court. Despite its prior experience with insurance coverage in this same dispute, the United States District Court for the Eastern District of Kentucky remanded the case, finding the controversy to be an "otherwise ordinary insurance dispute[.]"

Westport filed a Motion for Judgment on the Pleadings, while the Newport Insureds and Virgil filed Motions for Summary Judgment. The circuit court reviewed documents outside the pleadings, which converted Westport's motion to a Motion for Summary Judgment. CR[8] 12.02. The parties provided oral arguments to the circuit court on February 24, 2022. The circuit court then issued its Order on March 8, 2022, finding coverage was not triggered under the Westport LEL policies. The Newport Insureds and Virgil filed separate appeals.[9]

### STANDARD OF REVIEW

"The standard of review on appeal of a summary judgment is whether the circuit judge correctly found that there were no issues as to any material fact

---

[8] Kentucky Rules of Civil Procedure.

[9] During the pendency of this appeal, the Virgil Estate and the Newport lnsureds reached a settlement in principle of all claims asserted against the Newport Insureds in the Virgil Lawsuit. A term of the settlement is that the Newport Insureds have assigned to the Virgil Estate all rights to any insurance proceeds and all causes of action against Westport.

and that the moving party was entitled to a judgment as a matter of law." *Pearson ex rel. Trent v. Nat'l Feeding Systems, Inc.*, 90 S.W.3d 46, 49 (Ky. 2002). Summary judgment is only proper when "it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).

In ruling on a motion for summary judgment, the court is required to construe the record "in a light most favorable to the party opposing the motion . . . and all doubts are to be resolved in his favor." *Id.* A party opposing a summary judgment motion cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must present affirmative evidence to defeat a properly supported motion for summary judgment. *Id.* at 481. In *Steelvest* the word "'impossible' is used in a practical sense, not in an absolute sense." *Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky. 1992).

In this case, the underlying facts and the terms of the applicable policies are undisputed. The remaining interpretation and construction of an insurance contract is a matter of law, which we review *de novo*. *Auto-Owners Ins. Co. v. Veterans of Foreign Wars Post 5906*, 276 S.W.3d 298, 301 (Ky. App. 2009). As review is *de novo*, "no deference is given to the decisions of lower tribunals, even as to the existence of an ambiguity." *Kentucky Employers' Mutual Ins. v. Ellington*, 459 S.W.3d 876, 881 (Ky. 2015).

## ANALYSIS

The Newport Insureds and Virgil argue the circuit court erred in granting summary judgment to Westport. They argue the Westport LEL policies are injury-based occurrence policies, triggered if any injury occurs during the policy period. They allege that, because Virgil suffered loss of his personal liberty and experienced emotional distress during the Westport coverage period, there existed a continuous and ongoing personal injury. Thus, they argue Westport had at least a duty to defend the Newport Insureds as Virgil suffered continuous and ongoing injuries from being wrongfully incarcerated during the Westport policies.

An insurer has the duty to defend if there is "any allegation which potentially, possibly or might come within the coverage terms of the insurance policy." *Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 841 (Ky. 2005). The duty to defend is broader than the duty to indemnify. *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 280 (Ky. 1991). In this case, as we will explain, there is neither a duty to indemnify nor a duty to defend.

"To ascertain the construction of an insurance contract, one begins with the text of the policy itself." *Pryor v. Colony Ins.*, 414 S.W.3d 424, 430 (Ky. App. 2013), *abrogated on other grounds by Estate of Bramble v. Greenwich Ins. Co.*, 671 S.W.3d 347 (Ky. 2023). Since most insurance policies are contracts of

adhesion, courts recognize the doctrine of ambiguity as applicable. *Woodson v. Manhattan Life Ins. Co. of New York, N.Y.*, 743 S.W.2d 835, 838 (Ky. 1987). Clear and unambiguous terms in insurance policies should be given their plain and ordinary meaning. *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky. 1999). In the absence of ambiguities, courts will enforce the terms of an insurance policy as written. *Pryor*, *supra*, at 430.

The doctrine of reasonable expectations is a corollary to the rule for construing ambiguities. *Woodson*, *supra*, at 839. The reasonable expectation doctrine "is based on the premise that policy language will be construed as laymen would understand it." *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003) (internal quotation marks and citation omitted). But this doctrine applies only to policies with ambiguous terms that can have two or more reasonable interpretations. *Id.* When such an ambiguity exists, the ambiguous terms should be interpreted "in favor of the insured's reasonable expectations." *Id.* (internal quotation marks and citation omitted). Thus, the interpretation favorable to the insured is adopted. *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994). However, nonexistent ambiguities should not be utilized to resolve a coverage dispute against the company. *Id.* "We consider that courts should not rewrite an insurance contract to enlarge the risk to the insurer." *Id.* at

226-27. What an insured expected generally when buying insurance does not defeat unambiguous terms in the policy itself.

The insurance term "trigger" describes "that which, under the specific terms of an insurance policy must happen in the policy period in order for the potential of coverage to arise." *EnergyNorth Natural Gas, Inc. v. Underwriters at Lloyd's*, 848 A.2d 715, 718 (N.H. 2004). Liability insurance policies generally fall within one of two broad categories: "occurrence" policies and "claims-made" policies. *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658 (5th Cir. 1999). "A pure claims-made policy provides coverage for claims made during the policy period, regardless of when the events out of which the claim arose occurred. In contrast, an occurrence policy provides coverage for all 'occurrences' which take place during a policy period, regardless of when the claim is made." *Craft v. Philadelphia Indem. Ins. Co.*, 560 Fed. App'x 710, 711-12 (10th Cir. 2014) (internal quotation marks and citations omitted).

Courts have classified occurrence policies into subcategories based on how coverage is triggered. The manifestation theory is that coverage is triggered at the time personal injury becomes known to the victim. *Dow Chemical Co. v. Associated Indem. Corp.*, 724 F. Supp. 474, 478 (E.D. Mich. 1989). The injury-in-fact theory is that coverage is triggered when real personal injury first occurs. *Id.* The exposure theory is when coverage is triggered when the first exposure to

injury-causing conditions occurs. *Id.* Finally, if coverage is triggered so that insurance policies in effect during different time periods all impose a duty to indemnify, then the approach is labeled a "continuous" or "multiple" trigger theory. *Id.*

The Newport Insureds argue the Westport LEL forms are "injury-based" occurrence forms, triggered if "personal injury" occurs during the policy period, and that it does not matter whether the "occurrence" happens during the policy period. In their view, the occurrence or offense is continuing because Virgil suffered every day. So, the personal injury is continuous. Before we analyze the language of the Westport policies, we see that the Newport Insureds concede this is a personal injury claim, not one for bodily injury as defined.

## WESTPORT POLICIES

As suggested previously, we must carefully review the policy language contained in the Westport policies as a whole and in context. During the policy periods in which the Newport Insureds were insured, Westport used two different but similar LEL forms. Form CFM 92.4.0143 (4/92) ("92 Form") was utilized for the July 1, 1997 to July 1, 1998 and the July 1, 1998 to July 1, 1999 policy periods. The Insuring Agreement for the 92 Form reads, in part:

> We will pay those sums that the insured is legally
> obligated to pay as damages because of "bodily injury,"
> "property damage," or "personal injury" to which this
> insurance applies. We will have the right and duty to

defend any "suit" seeking those damages.  We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.  But:

. . . .

c. This **insurance applies to** "bodily injury," "**personal injury**," "property damage" and **only if**:

(1) **The** "bodily injury," "property damage" or "**personal injury**" **is caused by an** "**occurrence**" that takes place in the "coverage territory"; and

(2) The "bodily injury," "property damage" or "personal injury" occurs **during the policy period**.

(Emphasis added.)  The term "occurrence" is defined as either (a) "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in 'bodily injury' or 'property damage';[10] **or (b) [a]n offense that results in** '**personal injury**.'"  (Emphasis added.)  The term "personal injury" is defined in relevant part as "injury, other than 'bodily injury,' arising out of one or more of the following offenses . . . b. False arrest, detention or imprisonment . . . c. Malicious prosecution . . . or i. Violation of civil rights, including but not necessarily limited to violations of the Federal Civil Rights Act and similar laws."

---

[10] Because this case involves a personal injury, this subsection (a) does not apply.  Examples of such bodily injuries may be those caused by repeated exposure over time to chemicals, mold, asbestos, or other environmental factors.

Form CMPCK.1000 10/97 ("1000 Form") was used by Westport for the July 1, 1999 to July 1, 2000 policy period. The Insuring Agreement for the 1000 Form reads, in relevant part:

> a. We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury," "property damage" or "**personal injury**" **caused by an** "**occurrence**" **or offense**, as more fully described in the definitions of "personal injury," in the course of your "law enforcement activity" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking such "damages." However, we will have no duty to defend the insured against any "suit" seeking "damages" because of "bodily injury," "property damage" or "personal injury" to which this insurance does not apply. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. . . .
>
> . . . .
>
> b. This insurance **applies to** "bodily injury," "property damage" or "**personal injury**" **only if**:
>
> (1) The "bodily injury," "property damage" or "personal injury" is caused by an "occurrence" or offense that takes place in the "coverage territory"; and
>
> (2) **The** "bodily injury," "property damage" or "**personal injury**" **occurs during the policy period**.

(Emphasis added.) The definition of "personal injury" is substantially the same as the 92 Form.

-14-

## APPLICATION OF MALICIOUS PROSECUTION

Before we delve into the various case authorities pertinent to the issues in this case, we will address the confusion caused by the tendency to discuss malicious prosecution as the name of the tort claim and personal injury in such circumstances. We will discuss cases which use malicious prosecution as the rubric or example of the injury. As was pointed out by the parties, there is no longer a claim of malicious prosecution as applied to this litigation. This does not alter the reality that the actions giving rise to the § 1983 claim may also be actions alleged as part of a malicious prosecution claim.

This does not change the substance of the analysis. What allegedly happened to Virgil was a violation of his rights in a wrongful prosecution for which he may seek recovery under § 1983. This is the personal injury claim. Whether it meets all the details of a malicious prosecution claim is not the issue. We need not reject all the caselaw which discusses insurance coverage in the context of malicious prosecution. Under the facts of this case, sufficient similarity exists to justify application of the cases to be discussed.

We note as one example *Genesis Insurance Company v. City of Council Bluffs*, 677 F.3d 806 (8th Cir. 2012). In that case, the Court discussed the claim for civil rights violations as "in the nature of malicious prosecution." *Id*. at 810. Applying policy language like that in this case, the court determined the

offending occurrence happened before the terms of the policies, and a continuing

personal injury claim must be rejected.

**TRAVELERS POLICIES**

The Newport Insureds rely heavily on the Sixth Circuit's ruling in *St.*

*Paul*.  So, we should examine and compare the LEL policy the Newport Insureds

had with Travelers.  The *St. Paul* court reviewed the policies in place from July 1,

2007 to July 1, 2010 and their identical LEL provisions.[11]  The Travelers LEL

provision reads as follows:

> **Law enforcement liability**.  We'll pay amounts any
> protected person is legally required to pay as damages for
> covered **injury or damage that**:
>
> • results from law enforcement activities or operations
> by or for you;
>
> • **happens while this agreement is in effect**; and
>
> • is caused by a wrongful act that is committed while
> conducting law enforcement operations.

*St. Paul*, *supra*, at 381 (emphasis added).  The LEL provision defines "injury or

damage" as "bodily injury, personal injury, or property damage."  *Id.* (internal

quotation marks omitted).  Further, "bodily injury" means "any harm to the health

---

[11] In *St. Paul*, the parties agreed that, if there were coverage under the LEL provision of the first three policies (July 2007 to July 2010), there would be coverage under the fourth policy (July 2010 to July 2011), due to the fourth policy's "liberalization" provision.  The Newport Insureds in *St. Paul* appeared to have abandoned the argument for coverage under the last two Travelers policies.  *St. Paul*, *supra*, at 380 n.1.

of other persons" and "personal injury" means any "injury, other than bodily injury, caused by any of the following wrongful acts[, including] . . . [m]alicious prosecution." *Id.* (internal quotation marks omitted).

As previously noted, the Sixth Circuit in *St. Paul* reversed the district court's conclusion that Travelers is not obligated to defend or indemnify Newport against Virgil's lawsuit. *Id.* at 385. The court noted the Travelers LEL provision covers both injury **and** damages sustained during the policy period that the insured is legally required to pay for any "personal injury" caused by certain wrongful acts – in this instance, malicious prosecution. *Id.* at 383. The court stated: "Thus, by the plain terms of the LEL Provision, covered personal injuries include any injuries *caused by* the wrongful act – malicious prosecution. Malicious prosecution cannot, therefore, *be* the injury." *Id.* at 383 (emphasis in original). In other words, the court reasoned Virgil's injury was the "loss of personal liberty and attendant emotional pain and suffering caused as those years [of imprisonment] passed Virgil by" caused by the wrongful act of malicious prosecution. *Id.* That type of damage continued into the Traveler's policy period.

In coming to their conclusion, the Sixth Circuit analyzed *Travelers Indemnity Company v. Mitchell*, 925 F.3d 236 (5th Cir. 2019), which interpreted the exact same policy language as in *St. Paul*. The Fifth Circuit noted:

> The . . . policy provides coverage for "injury or damage that . . . happens while this agreement is in

effect." That temporal requirement applies only to the injury. The two other requirements for coverage – that the injury resulted from the insured's "law enforcement activities" and was "caused by a wrongful act that is committed while conducting law enforcement operations" – do not have a temporal limitation. [The insurer] thus bargained for an injury-based trigger of coverage, not an act-based trigger.

*Id.* at 241. The *Mitchell* court held that **bodily** injury coverage (which we do not have in the present case) was triggered by the wrongfully accused's multiple physical and mental health issues while incarcerated. *Id.* at 242.

In analyzing *Mitchell*, the *St. Paul* court omitted that the *Mitchell* court held there was **<u>no personal injury coverage</u>** for the insured because the tort of false imprisonment ends with the inception of legal process. *Mitchell*, 925 F.3d at 241. "The inception of legal process predated the Travelers policy period by decades, so the policy does not cover injuries for a claim of false arrest or imprisonment. . . . If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more." *Id.* (internal quotation marks and citation omitted). Similarly, the tort of malicious prosecution or civil rights violation for a wrongful prosecution is complete when the charges are brought, even though damages continue to be sustained.

The *St. Paul* ruling is inapposite to the current case. The Travelers policy in *St. Paul* was triggered by both injury **and** damages sustained during the term of the policy, unlike the Westport policy here which is triggered only by an

-18-

offense or occurrence causing a personal injury during the policy period. Because the damages continued into the Traveler's policy period, the *St. Paul* case may better fit into Virgil's concept of a continuing claim or multiple trigger for insurance coverage under the specific language of the Traveler's policies.

In its Order granting summary judgment to Westport, the circuit court noted:

> This case differs from *St. Paul*, where the policy agreed to pay for injury *or damage* that occurred during the policy period. . . . The St. Paul policy clearly stated that the *damages* must occur during the policy period, not simply the personal injury. Because the damages accrued during the policy period, the St. Paul policies were triggered.

(Emphasis in original.) The circuit court also noted that, per *Davis v. Kentucky Farm Bureau Mutual Insurance Company*, 495 S.W.3d 159 (Ky. App. 2016), Kentucky law states a tort occurs when the alleged injury first manifests. Kentucky has long recognized a separation of the injury itself and the damages later sustained. "A legal injury must be a violation of some legal right, and is distinct in meaning from the damage that may flow from the injury." *Combs v. Hargis Bank & Trust Co.*, 27 S.W.2d 955, 956 (Ky. 1930). The damage is the harm, or loss, sustained by reason of the injury.

This understanding is not contrary to what a typical insured would understand about insurance coverage. Anyone who has been in a car accident

-19-

would understand they were injured by the actions of an at-fault driver when the accident occurred. If they continued to have pain and suffering for years or had to have a second surgery a year later, they would understand they could claim more damages but would not have thought they had a new injury caused by the car accident – rather a continuation of the initial harm. For Virgil, his injury, whatever name might be given to it, occurred when he was wrongfully charged and incarcerated in 1987. The fact he continued to suffer damages every day does not alter this.

Keeping with the rubric of malicious prosecution, the circuit court outlined the elements of a malicious prosecution claim: (1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding. *Davidson v. Castner-Knott Dry Goods Co., Inc.*, 202 S.W.3d 597, 602 (Ky. App. 2006) (internal quotation marks and citation omitted). The circuit court determined that, save for the termination of the proceedings in Virgil's favor, all the elements of malicious prosecution took place at the time of Virgil's arrest, trial, and initial incarceration.

An injury for insurance purposes is not the same as a cause of action for that injury or the time limits for such a claim. For example, malicious prosecution does not ripen into a cause of action subject to an applicable statute of limitations until the successful termination of the prosecution. *McDonough v. Smith*, 588 U.S. ___, 139 S. Ct. 2149, 204 L. Ed. 2d 506 (2019). This does not change the analysis of what insurance coverage may apply. The personal injury or wrong committed results in a cause of action in which damages may be awarded against the wrongdoers. Insurance coverage answers the separate question of who pays the damages, an insurance company pursuant to the terms of its contract, or the wrongdoers themselves.

We agree with the circuit court's reasoning. Coverage under the Travelers policy in *St. Paul* was triggered by either an injury **or** damages occurring during the policy period provision. According to Westport's Form 92, Westport agreed to "pay those sums that the insured is legally obligated to pay as damages because of . . . 'personal injury' to which this insurance applies." According to Westport's 1000 Form, Westport agreed to "pay those sums that the insured becomes legally obligated to pay as 'damages' because of . . . 'personal injury' caused by an 'occurrence' or offense, as more fully described in the definitions of 'personal injury,' in the course of your 'law enforcement activity' to which this insurance applies."

Westport's policies are distinguishable from the Travelers policies as personal injury coverage under Westport's policies is only triggered by a personal injury arising out of one or more of certain offenses occurring during the policy period. Westport's policies are not continuously triggered by damages accumulating over the years like the Travelers policies.

As Kentucky's state courts have not addressed this precise question, we look to out-of-state authority to assist in our analysis of what triggers coverage. Many of the cases discuss the question in the context of the tort of malicious prosecution. Again, this categorization is not controlling as personal injury may take the form of multiple torts in these cases or as § 1983 liability. The common question is when does the personal injury occur for insurance coverage.

Most courts that have addressed this question have held the commencement of a malicious prosecution is the event that triggers insurance coverage. *St. Paul Fire and Marine Ins. Co. v. City of Zion*, 18 N.E.3d 193, 198 (Ill. App. Ct. 2014). "Although there is no agreement on when the tort of malicious prosecution occurs for insurance coverage purposes, the clear majority of courts have held the tort occurs when the underlying criminal charges are filed." *City of Erie, Pa. v. Guaranty Nat. Ins. Co.*, 109 F.3d 156, 160 (3d Cir. 1997) (citations omitted). A common rationale for the "majority rule" is that the

"essence," "gist," or "focus" of malicious prosecution is the filing of the underlying charges. *Id.*

This majority rule was first adopted by the Superior Court of New Jersey in *Muller Fuel Oil Company v. Insurance Company of North America*, 232 A.2d 168 (N.J. Super. Ct. App. Div. 1967). In *Muller Fuel*, the relevant policy provided that the insurer would pay "all sums which the insured shall become Legally obligated to pay as damages." *Id.* at 174. The insured in *Muller Fuel* was sued for malicious prosecution based on a criminal prosecution that was terminated in the accused's favor during the policy period. *Id.* at 170. The insured argued coverage was triggered by the accused's acquittal; the insurer argued coverage was triggered by the initiation of prosecution proceedings. *Id.* at 170-71. The court rejected the insured's argument, reasoning that "damage flows immediately from the tortious act" of filing a criminal complaint with malice and without probable cause. *Id.* at 174. The court added, "In a claim based on malicious prosecution the damage begins to flow from the very commencement of the tortious conduct – the making of the criminal complaint. Thus, wrong and damage are practically contemporaneous, although the passage of time can magnify the damage." *Id.* at 175.

In *Royal Indemnity Company v. Werner*, 979 F.2d 1299 (8th Cir. 1992), the

relevant policy agreed to cover claims brought against the policyholder for damages due to "personal injury . . . caused by an occurrence" that happened "during the policy period." Appellant Werner had filed a lawsuit against his former business partner for fraud. *Id.* at 1299. Werner's fraud action was dismissed, and the defendant subsequently filed a malicious prosecution suit against Werner. *Id.*

Werner demanded that Royal Indemnity defend and indemnify him in the malicious prosecution suit. *Id.* Royal Indemnity refused on the ground that the "occurrence" causing the "personal injury" was the filing of the fraud suit by Werner and that no coverage was provided since the occurrence arose outside the policy period. *Id.* at 1299-1300. The Eighth Circuit held the term "personal injury" is "likely intended to describe the time when harm begins to ensue, when injury occurs to the person[.]" *Id.* at 1300. The court reasoned Werner's fraud suit was when harm began to ensue and when injury occurred to Werner's former partner. *Id.*

Many other cases may be found accepting the majority view. We point out that our nearby sister states with similar insurance law principles have adopted the majority view. *See, e.g.*, *TIG Insurance Company v. City of Elkhart*, 122 F. Supp. 3d 795 (N.D. Ind. 2015); *City of Lee's Summit v. Missouri Public Entity Risk Management*, 390 S.W.3d 214 (Mo. Ct. App. 2012). We will conclude

this discussion with a case involving the same policy language because the case involved Westport's predecessor company using the same forms, during the same years as in this case, and with similar facts.

In *Coregis Insurance Company v. City of Harrisburg*, No. 1:03-cv-00920, 2006 WL 860710 (M.D. Pa. Mar. 30, 2006), an unpublished case from the United States District Court for the Middle District of Pennsylvania, the court analyzed a policy with virtually the same language as the Westport policies. Coregis had issued policies to the City of Harrisburg during the period between 1997 and 2001. *Id.* at *2. The City was named as a defendant in a civil rights lawsuit initiated by a plaintiff who was arrested in 1974 and later exonerated in 2003. *Id.* at *6.

Coregis denied coverage on the ground that the allegations set forth in the civil rights lawsuit concerned acts and injuries that first occurred in the 1970s, and not during any periods covered by any of Coregis' insurance policies at issue. *Id.* at *4. The court determined Coregis was not obligated to provide the City of Harrisburg with a defense in the civil rights lawsuit under any of the Coregis policies because the injuries pleaded in that litigation first occurred years prior to any of the applicable policy periods. *Id.* at *12. The fact that the plaintiff in the civil rights lawsuit may have had injuries or damages that extended into the respective policy periods did not change the court's analysis.

We are aware of authority to the effect of providing coverage under the wording of the policies in question. But such cases address allegations of affirmative wrongful conduct during the policy period which may be considered a new injury. For example, giving false testimony in a post-conviction hearing may be considered a new personal injury. *Siehl v. City of Johnstown*, No. 3:18-cv-00077-LPL, 2022 WL 4341364 (W.D. Pa. 2022). The Complaint in this case contains no such allegations, and the record is devoid of such evidence.

Another contention is that the Newport Insureds should have come forward after the initial personal injury of the wrongful prosecution. Continued concealment or taking no action did not cause a new personal injury. *Sarsfield v. Great American Ins. Co. of New York*, 833 F. Supp. 2d 125, 130 (D. Mass. 2008). While any failure to come forward is reprehensible and may well have other serious consequences, it is not a new personal injury. There is no constitutional right to exculpatory evidence after trial. *See District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52, 68, 129 S. Ct. 2308, 2319-20, 174 L. Ed. 2d 38 (2009). *See also Gavitt v. Born*, 835 F.3d 623, 647-48 (6th Cir. 2016). The wrong had already been done, and the damages continued from that original wrong.

**CONCLUSION**

The circuit court did not err when it determined Westport has no contractual obligation to defend the Newport Insureds in the Virgil Lawsuit. The personal injury of a wrongful prosecution of Virgil did not occur within the Westport policy periods. Therefore, the Order of the Campbell Circuit Court is AFFIRMED.

ALL CONCUR.

CASE NO. 2022-CA-0384-MR
BRIEFS FOR APPELLANTS:

Jason C. Kuhlman
Fort Mitchell, Kentucky


CASE NO. 2022-CA-0415-MR
BRIEFS FOR APPELLANT:

Alexander T. Brown
Kansas City, Missouri

Amy Robinson Staples
Shelbyville, Kentucky




ORAL ARGUMENT FOR
APPELLANTS:

Alexander T. Brown
Kansas City, Missouri

BRIEFS FOR APPELLEES:

William B. Orberson
Ryan D. Nafziger
Louisville, Kentucky


Adam H. Fleischer
Kevin F. Harris
Chicago, Illinois




ORAL ARGUMENT FOR
APPELLEES:

Adam H. Fleischer
Chicago, Illinois